HART *et al. v.* THE STATE.

Where the sole witness for the State is impeached, not only by evidence of bad character and by contradictory statements with reference to the substance of his testimony, but by testimony tending to disprove the main fact on which guilt depends, the court should not charge the jury upon sustaining the witness by proof of good character, unless there is some evidence on which to base such a charge. In this particular case the error is cause for a new trial, as the jury may have understood that the court had reference to certain evidence tending to show that the witness was industrious and reliable as a work-hand, and meant to treat this as evidence on which to base the charge.

October 9, 1893.

Indictment for selling spirituous liquor. Before Judge WILLIAMSON. City court of Monroe county. March adjourned term, 1893.

After conviction, defendant's motion for a new trial was denied. The material ground of the motion is, that the court erred in charging the jury §3875 of the code, there being no evidence to warrant such a charge, and the court not explaining what was meant by proof of general good character. The evidence was as follows:

Charlie Waller testified: I know the defendant, Orange Hart; saw him at a church near Montpelier Springs in Monroe county on the first Sunday in May,

1892; saw him sell Bob Davis ten cents worth of rye whisky, for which I saw Bob pay him ten cents; know it was rye whisky because I drank some of it. This was at the spring near the church. I don't know what time it was; it was during the first service. I went down to the spring about the time they took up a collection. Orange was down there, and sold Bob Davis the whisky. Dave and Lee Hart and Tom and Sam May and William Gibson were all there. I don't remember that I ever told Mr. Bill Maynard, at Maynard's mill, that I knew nothing of Orange selling the whisky. I never told Mr. Roger Hart, near the court-ground, that they could not prove by me that Orange sold this whisky.

For defendant, C. S. Wells testified: I know Charlie Waller; know his general character. It is not very good, it is not the best; he is a very good hand, but his morals are bad; and from a knowledge of his character I would not believe him on oath unless he was corroborated. By this I mean I would not believe him if he swore on any question alone. I never knew him on the stand to swear to a lie. As a work-hand he is very good and reliable, but his moral character is very bad. I would not swear that I would not believe him on oath.—R. A. Hart testified: I know the general character of Charles Waller; it is bad; from a knowledge of that character I would not believe him on oath. He told me, on the day we went up to the court-ground for commitment trial, that they could not prove by him that Orange sold whisky, for he knew nothing about it. He lived with me two or three years, and I found him so unreliable I could never believe anything he said. As a work-hand I found him satisfactory.—W. A. Maynard testified: Last fall Charlie Waller was at Maynard's mill. I asked him what he was going to do about these whisky cases against the Hart boys. He said he didn't

know anything about them except what Bob Davis told him,—Sam May testified: 'I was at the church with Orange Hart on the first Sunday in last May. Soon after he came we got together, about nine o'clock, and remained together nearly all the time until two or three o'clock. I went to the spring with him two or three times. He had no whisky that day, and sold none. Don't remember to have seen Charlie Waller at church that day. I never drank any whisky. I was not right with Orange all the time, but was in sight of him. We are pretty good friends. All us boys stayed pretty well together that day. Tom May, Lee and Dave Hart and William Gibson were all at the spring. Heard Charlie Waller say he reported Dave and Orange Hart because they had not treated him right.—Lee Hart testified: I was at church near Montpelier on the first Sunday in last May; was with Orange Hart most of the day; went to the spring with him several times, two or three at least; went every time he did. He had no whisky, and did not sell any. I wanted some, and asked if he knew where I could get any, and he replied, no. Charlie Waller told me he had to do something, for if he had not reported Orange and Dave they were going to report him. We boys were accustomed to treat each other, and occasionally carried whisky to the church. When we had whisky we would treat each other; would smell each other's breath, and if whisky was discovered, would ask him whose breath smelled of whisky to take a walk with us. Orange is my cousin.—William Gibson testified: I was at the church near Montpelier on the first Sunday in May, 1892; was with Orange Hart most of the morning. We were moving about sometimes in and sometimes out of the church. During the morning service, about the time they were taking up the collection at the church, we went down to the church(?). Lee and Dave Hart, Sam and Tom May were with us. Orange

did not sell any whisky at the spring or anywhere else while I was with him. I went to the spring only one time with him. We did not stay at the spring long. We wanted to get back to the collection, as a prize was offered to the crowd getting up the most money, and we wanted to know who got it. Orange and I are good friends. He came to my house that afternoon and stopped a while. Walking slowly it would take ten or fifteen minutes to go to the spring and back. Spring is about fifty yards from the church. —Tom May testified: I was at the church near Montpelier on first Sunday in last May. Was with Orange Hart most of the time. Went to the spring with him twice. He had no whisky that day, and sold none. I was not right with him all the time; sometimes I would go in the church and he would be out, but I went to the spring every time he did. I remained about the church until about two or three o'clock. We were all together most of the time. Lee and Dave Hart, Tom and Sam May and William Gibson were with us at the spring. —Defendant in his statement denied that he had or sold any whisky.

BERNER & BLOODWORTH, by HARRISON & PEEPLES, for plaintiff in error. M. W. BECK, solicitor-general, and B. S. WILLINGHAM, *contra*.

BLECKLEY, Chief Justice.

The State's case depended wholly upon the testimony of a single witness. He was impeached by evidence of bad character, by previous contradictory statements with reference to the substance of his evidence, and by evidence in behalf of the defence tending to disprove the main fact involved in the alleged guilt of the accused. There was no attempt to sustain him by evidence of his good character, and yet the court charged the jury that a witness sought to be impeached could be thus sustained. This charge was irrelevant and consequently erroneous.

Generally, no doubt, it might be treated as harmless, but in this particular case it may have done harm, for there was evidence tending to show that the witness was industrious and reliable as a work-hand. Such evidence is no substitute for the usual supporting evidence touching good character. The jury may have referred the charge to this evidence, for there was no other to which they could possibly have applied it. Inasmuch as this part of the charge was delivered from the bench as instruction in the case, they would naturally suppose that the presiding judge considered it pertinent to something in the facts submitted to them. If they took this natural view of the matter, there is a strong probability that they treated industry and reliability as a work-hand as equivalent to that general good repute which the law recognizes as a basis, when proved, for reposing confidence in the veracity of a witness. There was a triple attack upon this witness, and he stood alone and wholly unsupported. This being so, the charge of the court should neither expressly nor by implication have suggested to the jury that he was or could be sustained by evidence favorable to his general character. There ought to be a new trial.          *Judgment reversed.*