## CRAWFORD *v.* THE STATE.

1. Under the evidence submitted by the State, the homicide which formed the basis of the charge against the accused was unprovoked murder. Under the evidence of other witnesses to the killing, who were introduced by the defendant, the killing was justifiable homicide. There was no evidence which would have authorized the court to charge upon the subject of voluntary manslaughter.

2. There was no error in charging the jury as follows: "Malice as referred to in the law, gentlemen, does not necessarily mean that there shall be entertained by the slayer any hatred, or ill-will or ill-feeling, or anything of that character, towards the person killed. It means in law the intention on the part of the slayer to take human life under such circumstances that the law will neither justify nor in any degree excuse or mitigate that intention, if the killing should take place as intended. A man may kill another against whom he entertains no ill will whatever; he may be a stranger to him, and yet be guilty of murder. No particular length of time is required for malice to be generated in the mind of the slayer; it may be formed in a moment, and instantly a mortal blow may be given or a fatal shot fired; yet if malice is in the mind of the slayer at the time of the doing of the act or killing, and moves him to do it, it is sufficient to constitute the homicide murder." The exception to this charge upon the ground that it is not a correct statement of the law, and that it was misleading and confusing, is without merit.

3. Section 73 of the Penal Code reads as follows: "If a person kill another in his defense, it must appear that the danger was so urgent and pressing at the time of the killing, that, in order to save his own life, the killing of the other was absolutely necessary; and it must appear, also, that the person killed was the assailant, or that the slayer had really and in good faith endeavored to decline any further struggle before the mortal blow was given." The failure of the court to charge this section of the Code could not possibly have been harmful to the defendant.

4. Grounds of the motion for a new trial which are not referred to in the brief of counsel for the plaintiff in error are considered as abandoned.

No. 1512.   OCTOBER 15, 1919.

Indictment for murder. Before Judge Littlejohn. Webster superior court. May 21, 1919.

*G. Y. Harrell* and *R. R. Jones,* for plaintiff in error.

*Clifford Walker, attorney-general, Jule Felton, solicitor-general,* and *M. C. Bennet,* contra.

Beck, P. J. Sam Crawford was indicted for the offense of murder, and upon the trial of the case the jury returned a verdict of guilty, with a recommendation. The defendant made a motion for a new trial, which, after a hearing, the court overruled, and the defendant excepted.

1. In one ground of the motion the movant contends that he is entitled to a new trial because the court failed to give, as a part of his instructions to the jury, a charge upon the subject of voluntary manslaughter; movant insisting that the evidence demanded a charge upon this grade of homicide. There was no error in refusing to charge the law of voluntary manslaughter in this case. The killing with which the defendant was charged was either justifiable homicide or it was murder. There is no middle ground. Witnesses for the State testified to a state of facts which showed an unprovoked shooting of the decedent, unattended by any mitigating circumstances whatever. One eye-witness, John Williams, testified: "I saw the shooting and know that it happened in Webster county on the date I have named. John Bryant [the decedent] didn't do nothing to Sam Crawford to make him shoot him. He told him it was his dam car and our dam money [other evidence showing that there were negotiations for a ride with the accused in his automobile], and then Sam pulled out his pistol from his right-hand hip pocket. It was a shiny pistol. . . He pulled it partly out first at the railroad crossing, and at the time of the killing he pulled it slam out. Myself, Will Burt, John Bryant, and John Dice were together. . . Sam says, 'It will cost you a dime.' He says, 'I got money to burn.' That time his other brother come up in a car, and Sam says he was going to carry us boys to Kimbrough and was going to charge us a dime apiece." There was further altercation between the parties. They separated immediately after this, and there was no shooting at that time. In a short time the decedent and the accused met. At this point the witness continues: "John Bryant [the decedent] says, 'You boy in the middle with the cap on; aint you the one we tried to go to Kimbrough with?' He says, 'I feel mistreated about the way you treated me; you pulled your pistol out on me. I didn't mean no harm when I told you it was your dam car and our dam money, and I don't like it a dam bit;' and that time Sam [the accused] shot him, made two shots and he hit him once. At

that time John Bryant had nothing in his hand; that is, when he got shot. Sam shot twice, but hit John Bryant one time. There was no other pistol shot. After Sam Crawford shot John Bryant, John run his hand in his pocket and got his pistol, pulled it out and dropped it on the ground. He felt himself hurt, and was about to fall down there. He never got his pistol up, he got it out of his pocket and dropped it on the ground, and Sam Crawford picked it up. . . Sam Crawford shot him. John Bryant did not go for his pistol before he was shot. . . I suppose John and Sam were about five feet apart. When Sam got his pistol out to shoot he shot right then, shot right then, rapidly together, and one of the bullets hit John Bryant." Other testimony to the same effect was given by eye-witnesses. Clearly in all this testimony there appears no other crime than that of unprovoked murder; and the doctrine of voluntary manslaughter could not be invoked as applicable to the circumstances here portrayed.

Several eye-witnesses were sworn in behalf of the defendant. One of them was Clifford Moreland. On direct examination he testified as follows: "I remember the time that John Bryant got killed over here at the church. I was with that boy that killed him, Sam Crawford. We was on our way coming back from the spring. Roy Lee Moreland was with us, just us three. When we three come up from the spring we met John Bryant and John Williams coming from the spring. This John Williams asked Sam wasn't he the one driving the car, and Sam told him yes, and asked him why, and when Sam told him that asked him, 'Wan't you the one that cussed me?' When asked Sam, 'Did you cuss me?' Sam says, 'No, I an't the one.' That time this fellow walking on the right-hand side of the road pulled his pistol out and shot, and Sam jumped behind me and pulled out his pistol and shot. John Bryant pulled out his pistol and shot first. There was no cussing but that John (Tick) Bryant said, what did he want to cuss him out about his car? He did not cuss any right then; that's all he said. Then he stepped out of the road and shot at him, but didn't hit him. It was not long after that when ———— shot twice after he shot. It was right afterwards." On cross-examination the same witness testified: "When he backed and stopped he was about as far from Sam as from you to the jury. When he backed off that way he asked Sam Crawford wasn't he one

that cussed him out, and Sam told him 'No, sir;' says, 'I aint cussed you.' That time John Bryant pulled out his pistol and pointed it at him right straight, Sam kinder behind me, and he missed him. He shot at him on the other side. . . When Sam Crawford shot John Bryant he dropped the pistol and grabbed his hand this way. Sam Crawford never shot at John Bryant until John Bryant shot at him. Sam jumped behind me when John shot; I don't know how long before; I reckon I would have time to count ten. Now after John had shot and I had time to count ten about, Sam shot twice, very rapidly."

Three other eye-witnesses were introduced by the defendant. Their testimony is substantially the same as that which we have quoted above. All of this evidence clearly shows a case in which the accused was justifiably firing upon the decedent in defense of his own life. Summed up in a few words, it is that the decedent, without justification or provocation, drew his pistol and began firing at the defendant, and the defendant then drew his pistol and returned the fire. It requires no argument to demonstrate that the shooting under such circumstances would be justifiable.

These two theories of the State and of the defendant were properly submitted to the jury under the instructions of the court, and there was no place for a charge on the subject of voluntary manslaughter.

2-4. The rulings made in headnotes 2, 3, and 4 require no elaboration.

*Judgment affirmed. All the Justices concur.*