## COTTON *v.* THE STATE.

No. 15523. SEPTEMBER 7, 1946.

*Duke Davis* and *R. W. Martin,* for plaintiff in error.

*Eugene Cook, Attorney-General, L. M. Wyatt, Solicitor-General,* and *Rubye G. Jackson,* contra.

HEAD, Justice. (After stating the foregoing facts.) ■ The court charged the law of murder, the general law relating to voluntary manslaughter, and on justifiable homicide, but error is assigned in the first amended ground of the motion for new trial because, it is contended, the court should have charged the law of voluntary manslaughter as related to mutual combat, or the mutual intent to fight.

The evidence for the State, if credible, establishes that the killing of Nettie Rowe was done by the defendant without justification, alleviation, or mitigation, and that the defendant is guilty of murder. The evidence for the defendant, if credible, tends to establish that the killing of the deceased by the accused was justifiable under the fears of a reasonable man. The jury, however, were not restricted to evidence offered by one side or the other, but could have determined that parts of the evidence offered by each must be accepted as presenting true facts.

A composite of the evidence shows facts and circumstances essential to mutual combat, or the mutual intent to fight with deadly weapons. Under evidence for the State, the jury would have been authorized to find that the defendant and the deceased engaged in a quarrel; that the defendant left the scene of the homicide and returned with a shotgun in the leg of his overalls, or that the defendant had a shotgun in the leg of his overalls. The defendant's evidence (other than his statement, which would have

authorized the jury to find that the defendant shot in self-defense and was therefore justified) tends to show: That both of the deceased, Sut Swift and Nettie Rowe (who were brother and sister), were armed, Swift with a 22 rifle, and Nettie Rowe with a butcher knife; that the deceased, Nettie Rowe, had said to the defendant, "Don't you believe I will cut your . . damn neck off?" (Testimony of Robert Cotton); that the deceased, Sut Swift and Nettie Rowe (armed as stated) were advancing on the defendant; that Swift shot at the defendant with the 22 rifle, and Nettie Rowe said to the defendant, "If you don't make haste and get out you won't get out" (Evidence of J. C. Fox); and that Swift shot at about the time the defendant reached the outside door, and the defendant returned the fire with a shotgun.

"If an unjustifiable homicide resulted from the acceptance by him [defendant] of a challenge to enter into a mutual combat with deadly weapons, the killing was no more than voluntary manslaughter." *Jenkins* v. *State,* 123 *Ga.* 526 (51 S. E. 598). Mutual blows are not always necessary to make mutual combat. *Tate* v. *State,* 46 *Ga.* 157; *Gresham* v. *Equitable Accident Ins. Co.,* 87 *Ga.* 497 (13 S. E. 752, 13 L. R. A. 838, 27 Am. St. R. 263); *Findley* v. *State,* 125 *Ga.* 583 (54 S. E. 106); *Buchanan* v. *State,* 153 *Ga.* 870 (113 S. E. 87); *Ison* v. *State,* 154 *Ga.* 417 (114 S. E. 351); *Mathis* v. *State,* 196 *Ga.* 291 (26 S. E. 2d, 606). "The essential ingredient, mutual intent, in order to constitute mutual combat, must be a willingness, a readiness, and an intention upon the part of both parties to fight. . . An aggressor will not be allowed, under the law, to mitigate his crime on the theory of mutual combat when it appears that his victim had no desire to fight, and intended to fight only to the extent that a defense of his person against unprovoked attack was necessary." *Mathis* v. *State,* supra. In the *Mathis* case this court held that there was no evidence to authorize a charge on the law of mutual combat. The evidence in that case, however, showed that the deceased was unarmed, and that the defendant was the aggressor. In the present case, under the theory presented by the defendant's witnesses, the deceased, Nettie Rowe and Sut Swift, were the aggressors, the defendant declined to engage in mortal combat until he had been fired upon twice by Swift, and then, and then only, did

he return the fire, which resulted in death to the two persons advancing upon him.

In order to reduce a homicide to voluntary manslaughter there must be "some actual assault upon the person killing, . . or other equivalent circumstances to justify the excitement of passion, and to exclude all idea of deliberation or malice, either express or implied. . . The killing must be the result of that sudden, violent impulse of passion supposed to be irresistible." Code, § 26-1007. The essential element of "assault" may be found in evidence of a mutual intention to fight. *Ray* v. *State*, 15 *Ga.* 223; *Findley* v. *State*, supra; *Perry* v. *State*, 185 *Ga.* 411 (195 S. E. 175). The *Ray* case, which has been cited by this court many times, states the rule as follows: "Evidence of such assault, may be found in a mutual intention to fight, and in the fact of an approach, by the decedent, to the prisoner, in furtherance of this design, when it was not necessary for him to do so, in self defense." One of the leading cases in this State on mutual combat is that of *Gann* v. *State*, 30 *Ga.* 67. In the *Gann* case it is stated: "If, upon a sudden quarrel, the parties fight upon the spot, or presently agree and fetch their weapons and fight, and one of them is killed, such killing is but voluntary manslaughter, no matter who strikes the first blow." It is unnecessary here to determine whether or not the evidence would support an inference of an agreement to "fetch" weapons and fight. There is evidence from both sides of a quarrel, and under the defendant's testimony there is evidence of a fight.

The statements of Nettie Rowe previously quoted, standing alone, would not authorize a verdict of voluntary manslaughter, since under the Code, § 26-1007, provocation by words or threats are insufficient to constitute an assault. But if she was acting in concert with her brother, who was shooting at the defendant while she was advancing on the defendant with a butcher knife, when it was not necessary for her to do so in self-defense, it appears that she was actually making an assault, and intended to fight with the defendant. "A mutual intention to fight need not be proved directly, but may be inferred by the jury from the conduct of the parties." *Sapp* v. *State*, 2 *Ga. App.* 449 (58 S. E. 667).

This case comes within the rule stated in *Johnson* v. *State*, 173

*Ga.* 742 (161 S. E. 590), where it was held: "Being suddenly aroused by anger, and mutually intending to fight, the law of mutual combat is involved. Such combat sufficiently appears where it is shown that there was a mutual intent by the accused and deceased to fight, and one or more shots are fired. It makes no difference who fires the first shot, nor is it necessary that both parties shoot."

Where, as in this case, there was testimony as to facts and circumstances tending to show mutual combat, or the mutual intention to fight, the court should give in charge to the jury the law of voluntary manslaughter as related to mutual combat. A failure so to charge will require the grant of a new trial. *Gann* v. *State,* supra, *Waller* v. *State,* 100 *Ga.* 320 (28 S. E. 77); *Hart* v. *State,* 135 *Ga.* 357 (69 S. E. 530); *Brannon* v. *State,* 188 *Ga.* 18 (2 S. E. 2d, 654).

■ In special ground 2, error is assigned on the failure of the court to charge the law of justifiable homicide under the Code, § 26-1014. Where mutual combat, or the mutual intention to fight, is involved, as shown by the evidence, the court may properly charge on this section of the Code, but the court having charged the Code, §§ 26-1011, 26-1012, on justifiable homicide under the fears of a reasonable man, the defendant can not complain that he did not charge the more stringent rule in § 26-1014. Clearly such failure to charge was not hurtful to the defendant. *Crawford* v. *State,* 149 *Ga.* 485 (100 S. E. 633); *Buchanan* v. *State,* 153 *Ga.* 866 (113 S. E. 87).

■ Special ground 3 assigns error on the following charge of the court: "A witness may be impeached by disproving the facts testified to by him, or by proof of contradictory statements previously made by him relevant to his testimony and to the case, or by proof of general bad character. When thus impeached, or sought to be impeached, in either of the latter instances, he may be sustained by proof of general good character, the effect of the evidence to be determined by the jury." It is contended that, since no witness was sought to be impeached by proof of bad character, nor sought to be sustained by proof of good character, such charge is error for reasons assigned.

"In charging the jury how witnesses may be impeached, it is error to specify, as one of the modes, evidence of general bad

character, where there is no such evidence in the case." *City Bank of Macon* v. *Kent*, 57 *Ga.* 284 (9). See also *Brand* v. *Bagwell*, 133 *Ga.* 750 (6) (66 S. E. 935). In *Southern Ry. Co.* v. *O'Bryan*, 119 *Ga.* 151 (45 S. E. 1000), it was held: "It is improper for the judge to charge on the subject of impeachment by proof of general bad character, unless some attempt has been made to thus impeach a witness. Such an error, however, would not generally be a sufficient reason for the reversal of a judgment."

In *Geer* v. *State*, 184 *Ga.* 805 (2) (193 S. E. 776), it was held: "Where it was sought to impeach the only eyewitness (but not the only witness) for the State by proof of contradictory statements, and where such witness's own testimony tended to show she was a person of bad character, and where the State introduced no evidence of the general good character of the witness, an instruction by the court to the effect that where a witness has been impeached such witness may be reinstated by proof of general good character, while improperly given in charge, was harmless error under the facts." (See also cases cited.) In *Hart* v. *State*, 93 *Ga.* 160 (20 S. E. 39), it was held: "Where the sole witness for the State is impeached, not only by evidence of bad character and by contradictory statements with reference to the substance of his testimony, but by testimony tending to disprove the main fact on which guilt depends, the court should not charge the jury upon sustaining the witness by proof of good character, unless there is some evidence on which to base such a charge. In this particular case the error is cause for a new trial, as the jury may have understood that the court had reference to certain evidence tending to show that the witness was industrious and reliable as a work-hand, and meant to treat this as evidence on which to base the charge." In *Jones* v. *State*, 193 *Ga.* 449 (18 S. E. 2d, 844), it was held that, where the State sought to impeach the sole witness for the defendant (who was an eyewitness to the homicide) by proof of contradictory statements and by disproving facts to which he had testified, it was reversible error to charge that such witness might be sustained by proof of general good character, when no evidence of the good character of such witness was offered by the defendant.

In the present case, where there was no evidence of bad character and no evidence to sustain the witness by proof of good character, the court's charge was not applicable to the evidence. The

defendant's theory as to the homicide did not rest alone, however, upon the testimony of the witness sought to be impeached. There was testimony by other witnesses as to the contentions essential to his theory of the homicide. This being true, such inaccurate charge would not require the grant of a new trial.

■ Special ground 4 complains of the admission of certain testimony over the objection that it was not a part of the res gestæ. The court stated: "I think that is the rule. I admit it for the sole purpose to show the state of his mind, if it does. That is all it will be considered for." There was no objection by counsel at the time that the evidence was not admissible for such purpose. It is now contended that the evidence was objectionable because it did not show the state of the defendant's mind toward the deceased. Such objection to the admission of evidence can not be made for the first time in this court.

*Judgment reversed. All the Justices concur, except Duckworth, Atkinson, and Wyatt, JJ., who dissent.*

DUCKWORTH, J., dissenting. This was plainly either a case of murder or killing in self-defense. There was no semblance of mutual desire and intention to fight, and whether or not the evidence authorized the charge on impeachment, it does not seem that any possible harm could have resulted therefrom to the defendant, and if not, a reversal on this ground was not authorized.