19638. WEATHERBY *v.* THE STATE.

CANDLER, Justice. DeWitt Weatherby was indicted in Haralson County for murder. The indictment alleges that he unlawfully, feloniously, and with malice aforethought killed Cecil Thompson on May 13, 1956. He was tried, convicted of the offense charged, and on the jury's recommendation for mercy sentenced to life imprisonment. He moved for a new trial on the usual general grounds, amended his motion by adding seven special grounds, and excepts to a judgment denying his amended motion. *Held:*

1. The evidence, though conflicting, is amply sufficient to support the verdict. Hence, the general grounds of the motion for new trial are without merit.

2. In special ground 1, it is alleged that the court erred in charging the jury on the law respecting confessions of guilt. There is no contention that the charge as given on this subject was abstractly incorrect, but the movant's position is that such a

charge was not authorized by the evidence or his statement to the jury. As to this, we think his position is untenable. A charge on confessions is proper where the accused freely and voluntarily admits the homicide of which he is charged, but, in connection therewith, states no facts or circumstances showing excuse or justification therefor; and this is true because the law presumes every homicide to be malicious until the contrary appears from facts or circumstances showing excuse or justification. *Mann* v. *State*, 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (NS) 934); *Pressley* v. *State*, 201 *Ga.* 267 (39 S. E. 2d 478). In *Coney* v. *State*, 90 *Ga.* 140 (3) (15 S. E. 746), where the defendant was charged with the murder of a negro by shooting him with a pistol, and where the evidence showed that the person shot died from the wound thus inflicted, it was held that there was no error in charging the jury on the law of confessions where the State introduced the following evidence: Two or three hours after the death of the negro who had been shot by the defendant, the coroner showed him a pistol and asked him if that was his pistol, to which he replied that it was. The coroner then said to him, "Don't claim it unless it is yours," and he replied, "It is my pistol." The coroner further asked him, "Is this the pistol you killed that negro with?" and he replied, "That is the one I shot him with." For a like unanimous ruling on similar facts, see *Calhoun* v. *State*, 210 *Ga.* 180 (78 S. E. 2d 425). In *Lucas* v. *State*, 146 *Ga.* 315, 328 (91 S. E. 72), where the defendant was indicted for the murder of his wife by shooting her with a pistol, and where the evidence showed that she was killed at her home; that she had been shot with a pistol slightly above and to the rear of the left ear; that this wound—the only one on her body—produced her death; and that the defendant when arrested had a pistol on his person—this court by a five-to-one decision held: "The evidence that on the night subsequent to the homicide the accused said to the arresting officer that he had been separated from his wife and went to the house where his wife lived, to take a letter from a piano house about a piano, and that when his wife turned to go into the house he shot her, and that after the shot was fired he left the house, is sufficient to establish a confession of guilt by the accused of the murder of his wife by shooting her as charged in the indictment. Inasmuch as the law, in the ab-

sence of mitigating circumstances, declares a homicide to be felonious and done with malice, the confession by the accused that he did the act which produced the death of his wife is a confession that he killed her; and this proposition is established by the case of *Webb* v. *State,* 140 *Ga.* 779 (79 S. E. 1126).'' The record shows that Lucas fled immediately after the shooting, and when arrested several miles away the officers did not tell him that his wife was dead, and in his answers to them which were relied on as a confession, he did not state that she was dead. The *Webb* case, which was cited by the court as authority for its ruling in the *Lucas* case, was by a full bench. There the reported facts show only that Webb admitted that he did the act which produced the death of the person killed, and in connection therewith stated no facts or circumstances showing excuse or justification for the homicide. A charge on confessions is authorized when the accused admits the homicide with which he is charged and in connection therewith states no facts or circumstances showing excuse or justification for the killing; and this is true although he, when referring on another occasion to the killing, states facts or circumstances showing excuse or justification therefor. *Nail* v. *State,* 142 *Ga.* 595 (3) (83 S. E. 226). In *Coates* v. *State,* 192 *Ga.* 130 (15 S. E. 2d 240), where it was held that a statement made by the defendant amounted to a confession of guilt, the *Lucas, Webb,* and *Nail* cases, supra, were, together with others, cited as authority for the ruling there made. In the instant case the record shows, without dispute, that the accused shot the deceased three times with a pistol and that the deceased died, from the wounds so inflicted, during the night he was shot and soon after reaching a hospital a short distance away from the defendant's place of business. One bullet entered his left chest and lodged just under the skin on his right side. Another entered through his privates on the left side and lodged in his right thigh and the third entered just below his left hip-bone. James Greenway, a witness for the State, testified that he and several others were playing poker at the defendant's place of business when the shooting occurred and in a room adjacent to the one in which Thompson was shot; that, just before the shooting, he heard the defendant say to Thompson, "You can't run my help off"; that, as soon as the shooting was over, the defendant came to the door

and told them to sit down as he had shot Thompson low and he was not hurt; and that after the defendant got upstairs he heard him say, "God, I hope the boy isn't hurt" or "I hope he will live." During this entire conversation, the defendant offered no excuse or justification for the shooting. Harvey Gentry, a witness for the State, testified that, immediately after the shooting, the wife of the accused was "hollering and screaming" and that she asked the accused, "Why did you do it?" and that he replied to her, "I don't know why I done it, but I done it," and, according to Gentry's testimony, this was the entire conversation between the accused and his wife. This witness also testified that he later had a conversation with the accused during the night of the killing, and the accused stated to him: "I hope he lives too, but I ain't going to be pushed around." L. P. Allen testified for the State: that he was the Sheriff of Haralson County, and was such officer when Cecil Thompson was killed; and that, during the night of the killing, the accused telephoned him and stated that he had shot Thompson three times. The defendant, in his statement to the jury, said that immediately after being informed that Thompson was dead, he called the jail again and talked to Sheriff Allen's wife and said to her: "Mrs. Allen, I thought Pink (the sheriff) was coming on out here, I have shot a man." The evidence shows that all of these statements were freely and voluntarily made by the accused and in neither of them did he offer any excuse or justification for shooting Thompson. In these circumstances his admission that he did the act which produced Thompson's death amounts to a confession that he killed him; and, under the rule announced in the authorities stated above in this division, it is clear to us that the trial judge did not err, as contended, in giving that portion of the charge complained of in this ground of the motion.

3. In his charge to the jury the judge gave the following instruction: "A witness may be impeached by disproving the facts testified to by him, or by proof of contradictory statements previously made by him, of matters relevant to his testimony and to the case, or by general bad character. That is the law with reference to the impeachment of witnesses. I charge you further in that respect, when thus impeached, or sought to be, in either of the latter instances he may be sustained by proof of general good character, the effect of the evidence to be

determined by the jury." Immediately after this instruction was given, the judge specifically stated to the jury that the State had not undertaken to impeach any witness introduced by the defendant by proof of general bad character, and that they should look to the evidence and determine from it whether or not any witness of the defendant had been impeached by the State in any other way mentioned by him. During the trial the State sought to impeach Robert Cannon, a witness for the defendant, by disproving the facts testified to by him and by proof of contradictory statements previously made by him of matters relevant to his testimony and to the case, and no evidence respecting his character was introduced. It is alleged in special ground 2 of the motion for new trial that, since the State had undertaken to impeach the defendant's witness Cannon by proof of contradictory statements previously made by him of matters relevant to his testimony and to the case, and since the defendant had offered no evidence of Cannon's general good character, it was reversible error for the judge to instruct the jury that he might be sustained by proof of general good character. This ground of the motion does not require a reversal of the case. The portion of the charge complained of is a correct statement of the law; and assuming that it was inapplicable as being unauthorized by the evidence, it was, under the facts of this case, harmless. See *Kelly* v. *State,* 118 *Ga.* 329 (1) (45 S. E. 413) ; *Helms* v. *State,* 136 *Ga.* 799 (72 S. E. 246) ; *Geer* v. *State,* 184 *Ga.* 805 (193 S. E. 776) ; *Cotton* v. *State,* 201 *Ga.* 285 (39 S. E. 2d 530). We have not overlooked or failed to consider *Hart* v. *State,* 93 *Ga.* 160 (20 S. E. 39), and *Jones* v. *State,* 193 *Ga.* 449 (18 S. E. 2d 844). The rulings there made were predicated on facts different from those in the instant case.

4. Special ground 3 of the motion, which alleges that the court erred in failing, without request therefor, to charge the jury on the law of voluntary manslaughter as it relates to mutual combat, is without merit. Mutual combat exists where there is a fight with dangerous or deadly weapons, and when both parties are at fault and are mutually willing to fight because of a sudden quarrel. Code § 26-1014; *Harris* v. *State,* 184 *Ga.* 382 (191 S. E. 439) ; *Cone* v. *State,* 193 *Ga.* 420, 428 (18 S. E. 2d 850) ; *Mathis* v. *State,* 196 *Ga.* 288 (26 S. E. 2d 606) ; and the cases there cited. Here, the accused planted his de-

fense wholly on the theory of justification, and the evidence introduced by him and his statement, if believed by the jury, would have been sufficient to prove that he killed Thompson in self-defense. So, as here, when the evidence submitted by the State makes a case of murder, and the evidence introduced by the accused and his statement to the jury show a case of justifiable homicide, a charge on the law of voluntary manslaughter as it relates to mutual combat is neither required nor authorized. *Johnson* v. *State*, 173 *Ga.* 734 (161 S. E. 590) ; *Joyner* v. *State*, 208 *Ga.* 435 (67 S. E. 2d 221), and the cases there cited.

5. After giving a long and favorable charge on the rule respecting circumstantial evidence, about which there is no complaint, the judge stated to the jury: "It is contended by the defendant . . . that certain facts material to the case are based on circumstantial evidence, and that is the reason for that charge." Special ground 4 alleges that this statement requires a reversal of the judgment denying a new trial. It is the movant's contention that, because of the complained-of statement, it did not explicitly appear to the jury that the judge himself gave the instruction relative to circumstantial evidence as a correct proposition of law; that it was calculated to and did indicate to the jury a doubt as to the applicability of the rule respecting circumstantial evidence; and that it was calculated to and did cause the jury to believe the charge on circumstantial evidence was given solely because of the defendant's contention, rather than because such rule was applicable by reason of the evidence adduced on the trial. Both direct and circumstantial evidence were introduced on the trial; and this being true, it is well settled that the judge was not required to charge the rule respecting circumstantial evidence in the absence of a timely and proper written request therefor. *Cliett* v. *State*, 132 *Ga.* 36 (63 S. E. 626) ; *Booth* v. *State*, 198 *Ga.* 648 (32 S. E. 2d 303). No written request to charge on circumstantial evidence was here made; but, during his argument in a criminal case, counsel may read, either to the court or to the jury, the law he thinks applicable to his client's case; and may, at that time, orally request a charge on any principle of law involved in the case. Code (Ann. Supp.) § 24-3319 (Rule 19) ; *Powell* v. *State*, 65 *Ga.* 707 (3). The judge said that the charge on circumstantial evidence was

given because the defendant contended that an effort had been made to establish certain facts material to the case by that character of evidence; and for aught we know it was made either in counsel's presentation to the court or to the jury of the law he thought applicable to his client's case or during his argument of the facts to the jury. Since there was no written request for the judge to charge the rule respecting circumstantial evidence, we know the contention that such rule was applicable and should be charged was orally made at some time during the trial. In *Comer & Co.* v. *Allen*, 72 *Ga.* 1, *Hamilton* v. *State*, 129 *Ga.* 747 (59 S. E. 803), *Dotson* v. *State*, 136 *Ga.* 243 (71 S. E. 164), and *Yeates* v. *Yeates*, 162 *Ga.* 153 (132 S. E. 768), where there were written requests to charge certain principles of law, this court unanimously held in each case that it was not erroneous for the trial judge to state to the jury that he was giving that portion of his charge at the request of the party so requesting it. However, in each of those cases this court stated that it would be better practice for the trial judge not to make such a statement; and there is a motion in this case to review those cases and overrule such holdings, but until the precise question there decided is presented to us for decision, we will decline to review them. Ordinarily, a different situation exists where there is a written request to charge some principle of law, and where an oral contention is made during the trial that some principle of law should be charged. The former may be handed to the judge without the jury's knowledge thereof; the latter is usually made in the presence and hearing of the jury. While it would have been better practice for the judge not to have made the statement complained of, nevertheless, in the circumstances of this case, we do not think it was an error so grave in character as to require a reversal; and this is especially true since it does not appear from the record that the defendant's contention was made out of the presence and hearing of the jury.

6. The court instructed the jury as follows: "I charge you, gentlemen, that if you find from the evidence, or from the defendant's statement, or both, that the defendant made an admission or confession or statement as to the killing and how it was done, then you would not be authorized to take one part of that admission and ignore the other part. In other

words, if the State relies upon admissions of the defendant, the admissions must stand as a whole before you in your consideration of this case. The jury, however, in passing upon the confession or incriminating admission, may, if they see proper, accept a part thereof as true and reject a part as false." Respecting this portion of the charge, it is alleged in special ground 5 that the words, "then you would not be authorized to take one part of that admission and ignore the other part," rendered this portion of the charge erroneous. This position is not well taken. In *Morrow* v. *State*, 168 *Ga.* 575 (4), 583 (148 S. E. 500), a murder case, a charge in exact language as the one here given was unanimously approved. Later in *Sligh* v. *State*, 171 *Ga.* 92 (5), 109 (154 S. E. 799), the following charge in a murder case was approved: "If you find from the evidence in this case that the State has proved for your consideration any statements or admissions alleged to have been made by the defendant, as a necessary part of its chain of evidence against this defendant, it is your duty to consider such statements or incriminatory admissions, if proved, in their entirety, or as a whole, for the purpose of determining what the truth of such statements or admissions is; you are authorized to accept and believe a portion of such statements or admissions, and reject and disbelieve the remaining portion of the same if you do not believe it to be true." Hence, this ground of the motion is without merit.

7. Special ground 6 alleges that the court erred in giving the following charge: "When a witness has been successfully impeached by any of the legal methods, that is, where his unworthiness of credit is absolutely established in the minds of the jury, he ought not to be believed and it is the duty of the jury to disregard his entire testimony unless it is corroborated, in which case you may believe the witness, it being a matter of course always for the jury to determine whether a witness has or has not been so impeached." Movant contends that this portion of the charge was unsound as a matter of law, and therefore prejudicial and harmful to him. This ground is likewise without merit. An identical instruction was given by the trial judge and unanimously approved by this court in *Landers* v. *State*, 149 *Ga.* 482 (100 S. E. 569) ; and, as authority for the ruling there made, *Powell* v. *State*, 101 *Ga.* 9 (5), 19 (29 S. E. 309, 65 Am. St. R. 277), and *Hamilton* v. *State*,

143 *Ga.* 265 (4) (84 S. E. 583), were cited by the court, and they support the ruling there made.

8. Special ground 7 alleges that a new trial should be granted movant because J. W. Newell, one of the jurors, while separated from the other jurors and while unattended by a bailiff, talked to Roy House, Fletcher J. Johnson, and to other persons, the names of whom are unknown to movant. In support of this ground Roy House testified that he knew J. W. Newell was a member of the Weatherby jury; that he saw him standing alone in front of the M. & W. cafe in Bremen, Georgia; that he asked the juror, "Have you all reached a verdict in the Weatherby case yet?" at which time the juror stated "that they had not"; that he then asked the juror how they stood and he replied, "some are for turning him loose and some are for convicting him"; that he then stated to the juror, "Well, I would not want your job as it has been a bad case"; and that other people were speaking to and conversing with the juror as they passed by the cafe. Fletcher J. Thompson, also testified for the movant, that, during the time the jury had Weatherby's case for determination, he saw the juror Newell standing alone and unattended by any bailiff on the street in front of the M. & W. cafe; that he saw him talking to several persons; and that he called the attention of John Cook, Wilber Denny, and Glen Porter to the fact that he was alone and talking to those who passed by the cafe. John Cook and Wilber Denny, as witnesses for the movant, on direct examination testified that they saw the juror Newell standing alone on the street in front of the M. & W. cafe. On cross-examination, the witness Cook admitted that he had on that day told Mr. Murphy, of counsel for the State, that W. A. Wilkerson, a bailiff, was within six feet of the juror while he was standing in front of the cafe. And on cross-examination the witness Denny was asked if Sheriff Allen and two named bailiffs could have been standing near the juror at the time he saw him in front of the cafe, and in answer to this he said, "Sure, I didn't particularly notice anybody." Denny testified positively that he saw no one talking to the juror. The defendant and his attorneys testified that they had no knowledge of the facts which House, Thompson, Cook, and Denny testified about until after the verdict was rendered. It was stipulated that Sheriff Allen and all others who had charge of

the jury had taken the oath prescribed for a bailiff before they took charge of the jury. The record shows that the juror Newell was a Negro—the only one on the jury; that he was 64 years old; and that the parties agreed for him to sleep and eat apart from the other jurors, but to be accompanied at all times by a bailiff. The State made a lengthy counter-showing respecting this ground of the motion. Concerning his presence in front of the M. & W. cafe as testified to by movant's witnesses, the juror Newell testified that he finished eating his breakfast in the kitchen before the other jurors did in the main part of the cafe; that he was carried to a place in front of the cafe by a bailiff where they waited for the other jurors and the bailiff in charge of them; that a bailiff was with him during all of the time, never more than 5 feet away from him; that no one spoke to him; that he spoke to no one; and that, as soon as the other jurors finished eating their breakfast, they were all carried to the courthouse, and his testimony was corroborated in every material respect by the testimony of Sheriff Allen and bailiffs W. A. Wilkerson and John Eaves, who were personally in charge of the jury during the time referred to by movant's witnesses. When evidence is offered in support of a ground in a motion for new trial, and a counter-showing is made by the State, which results in a conflict in the evidence, the trial judge must pass on such evidence, and his findings will not be controlled by this court unless it is made to appear that he has abused the discretion vested in him as the trior of the issue thus presented. *Morakes* v. *State*, 201 *Ga.* 425 (3) (40 S. E. 2d 120). As to this ground of the motion no abuse of discretion appears; hence it is without merit.

9. For no reason assigned is the judgment complained of erroneous.

*Judgment affirmed. All the Justices concur, except Head, J., who dissents.*

ARGUED MARCH 11, 1957—DECIDED APRIL 9, 1957—
REHEARING DENIED APRIL 24, 1957.

*William Hall, George D. Stewart, D. B. Howe, Harold L. Murphy, Forrest C. Oates, Frank S. Twitty, Bruce B. Edwards,* for plaintiff in error.

198

*Claude V. Driver, James B. Murphy, Thomas B. Murphy, Robert J. Noland, Solicitor-General, James I. Parker, Assistant Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.