James Franklin REEVES, Petitioner,

v.

Amos E. REED, Respondent.

No. C–C–77–081.

United States District Court,
W. D. North Carolina,
Charlotte Division.

May 26, 1978.

Norman B. Smith, Smith, Patterson, Follin, Curtis, James & Harkavy, Greensboro, N. C., for petitioner.

Richard N. League, N. C. Dept. of Justice, Raleigh, N. C., for respondent.

## MEMORANDUM OF DECISION AND ORDER

McMILLAN, District Judge.

James Franklin Reeves, petitioner, present age sixty-eight, was tried in the Superior Court of Mecklenburg County,

North Carolina, on a charge of second degree murder, was convicted by a jury on January 16, 1976, of voluntary manslaughter, and was sentenced to prison.

Reeves, now in prison, seeks habeas corpus relief, contending that he was deprived of due process of law by the court's instruction to the jury that "the law implies" unlawfulness and malice if intentional shooting with a deadly weapon is shown. Since intentional shooting with a deadly weapon was shown and admitted, petitioner says this instruction imposed an unconstitutional burden upon him, the criminal court defendant, to prove lawfulness and lack of malice.

Although the alleged crime occurred on December 3, 1974, and Reeves told the police within the hour that he had shot Billy Edward Chasteen, the case was not brought to trial until January 13, 1976. Except for the examination of a ballistics expert whose testimony was not material, the prosecution was conducted, not by the district attorney, but by outside counsel.

The prosecution arose out of a shooting that occurred in the home of petitioner Reeves on East Ninth Street in Charlotte on December 3, 1974, around 3:00 o'clock in the morning. Six persons were in the house at the time. One of them was called as a witness by the prosecution and four, including the petitioner Reeves himself, testified for the defense. (The deceased was the sixth person.)

Undisputed testimony showed that on the night of December 2, 1974, the petitioner Reeves was playing poker with a friend, Mack Waldon. Around 10:00 o'clock P.M. Billy Edward Chasteen, an employee of Waldon, and Michael Warren (R. 21–31), a sixteen-year-old friend of Chasteen, drove to the house in a dump truck belonging to Waldon. They brought Chasteen's double-barreled shotgun with them. Later, because the truck door could not be locked, Michael Warren was asked to bring the shotgun into the house; he did so but dropped it and broke the stock (R. 23), which seems to have disturbed Chasteen.

Robert Johnson (R. 52–62), aged 40, and his girl friend, aged 17 (now his wife), joined the group some time during the evening.

Chasteen appears to have been in a quarrelsome mood. Early, he was upset because Michael Warren had dropped and damaged his gun (R. 68). Later, he and Robert Johnson had several arguments, with Chasteen apparently the more aggressive of the two. It was suggested they were arguing about whether Chasteen's source of marijuana was more or less expensive than Johnson's source of marijuana. There was no evidence of any cross words or animosity between Reeves, the petitioner, and Chasteen, the deceased; petitioner (R. 81) said he did not remember ever having seen Chasteen except on one previous occasion.

About 3:00 o'clock in the morning, pursuant to the continuing "discussion" between Chasteen and Johnson, Chasteen cut Johnson in the neck with a box cutter which he had with him (R. 78). The box cutter is a metal frame or handle which contains a retractable razor blade. Johnson exclaimed that Chasteen had cut him in the neck. Immediately afterward Chasteen approached Reeves, the petitioner, from behind, and held the razor blade of the box cutter up against Reeves' neck. Chasteen called for his shotgun; it was given to him by Michael Warren, his companion; and he then separated himself from Reeves, went to the door and faced the entire group with the shotgun, telling them to get down on the floor (R. 78–79).

After ordering everybody to the floor, Chasteen ordered his friend, Michael Warren, to hold the gun on the group and said that he "was going to cut our heads off" with the box cutter knife (R. 54, 63, 65, 69–70). According to Waldon, the last thing said before the shooting started was a statement by the deceased, Chasteen, that "I am going to kill . . . ."

After these threats by Chasteen, the witness Johnson charged Chasteen with a chair (R. 79), but without success; Chasteen, according to one witness, clubbed Johnson with the barrel of the gun (R. 26), inflicting

a blow which apparently dazed Johnson and required sixteen stitches to sew up (R. 59). With Johnson out of action Chasteen, according to witnesses, was still on his feet, pointing the shotgun at Reeves, the petitioner, from a distance of ten feet or so. In the face of Chasteen's threats and the muzzle of the gun, the petitioner fired three or four shots with a revolver in rapid succession from a distance of about ten feet. Chasteen, with shotgun and razor knife still in his hands, slumped to the floor.

Reeves went immediately to the telephone and called the police (R. 80). Chasteen still held the gun and the knife when the police arrived a few minutes later, according to several witnesses, including the police.

Immediately before making threats with the gun, Chasteen, according to the evidence, "broke the gun open and showed us the gun was loaded and then threw it back closed" (R. 70, 72, 74). The shotgun was still loaded when the police arrived (R. 43).

Michael Warren, the only eyewitness called by the prosecution, gave testimony from which it could have been found that the shotgun fell from the deceased's hands an instant before or simultaneously with the shooting; otherwise his testimony was substantially similar to that of the other witnesses.

The range of sentences for voluntary manslaughter under N.C.G.S. § 14–18 is "not less than four months nor more than twenty years." For shooting Chasteen in self-defense in his own home under the circumstances described above, the trial judge sentenced Reeves to *twenty years* in prison—the absolute maximum allowed by the statute!

Under the statutes of North Carolina, malice is an element of second degree murder, and unlawfulness is an element of both second degree murder and manslaughter.

The trial judge instructed the jury as follows:

"Now, I charge you, Members of the Jury, that for you to find the defendant, James Franklin Reeves, guilty of second-degree murder, the State must prove two things beyond a reasonable doubt: First, that the defendant, James Franklin Reeves, intentionally and without justification or excuse, and with malice, shot Billy Edward Chasteen with a deadly weapon. Malice is not only hatred, ill will, or spite as it is ordinarily understood. To be sure, that is malice but it also means that condition of mind which prompts a person to take the life of another intentionally or to intentionally inflict a wound with a deadly weapon upon another, which proximately results in his death, without just cause, excuse or justification.

"*Now, Members of the Jury, a .38 caliber pistol is a deadly weapon.* Second, the State must prove beyond a reasonable doubt that the shooting was a proximate cause of Billy Edward Chasteen's death. Proximate cause is a real cause, a cause without which Billy Edward Chasteen's death would not have occurred. *If the State proves beyond a reasonable doubt or it is admitted that the defendant intentionally killed Billy Edward Chasteen with a deadly weapon, or intentionally inflicted a wound upon Billy Edward Chasteen with a deadly weapon, which proximately caused his death, then if no other evidence is presented, the law implies first, that the killing was unlawful and second, that it was done with malice and if nothing else appears, the defendant would be guilty of second-degree murder.*

"*Voluntary manslaughter is the unlawful killing of a human being without malice*, without premeditation and deliberation. A killing is not committed with malice if the defendant acted in the heat of passion, upon adequate provocation, in which case, it would be voluntary manslaughter. The words, "heat of passion" do not mean mere anger. It means that defendant's state of mind was at the time so violent as to overcome his reason to such an extent that he could not form a deliberate purpose or control his actions." [All emphasis added.]

In later parts of the charge the court explained the elements of second degree murder and manslaughter and stated the law regarding the prosecution's burden of proof. In his final summary he charged the jury that the prosecution must prove beyond a reasonable doubt that the defendant did not act in self-defense.

The jury retired and deliberated for a time.

The following day, upon request, the court repeated the elements of murder and manslaughter. The instruction under challenge here was repeated, including the presumptions of malice and unlawfulness which arise from proof of intentional killing.

Petitioner says that the challenged instruction denied due process of law because it told the jury, in effect, that notwithstanding the strong evidence from numerous witnesses that the shooting was justified in self-defense, an implication or presumption arose from the evidence that the shooting was malicious and unlawful, thereby putting the burden of proof of self-defense upon the defendant.

 No formal objection to the challenged instruction was made at the trial and none was made on the appeal to the Supreme Court of North Carolina. Formal objection to such an instruction at the trial is not necessary to preserve the issue on appeal in North Carolina. *State v. Lambe*, 232 N.C. 570, 61 S.E.2d 608 (1950).

 Petitioner says that the presumptions of unlawfulness and malice are constitutionally prejudicial because (a) they eliminate the prosecution's burden of proving beyond a reasonable doubt every fact necessary to constitute the crime, and (b) they violate the requirement that the connection between the basic facts (intentional wound with a deadly weapon) and the presumed facts (unlawfulness and malice) be proved beyond a reasonable doubt. Both arguments have been rejected by the North Carolina Supreme Court. *State v. Hankerson*, 288 N.C. 632, 220 S.E.2d 575 (1975); *State v. Williams*, 288 N.C. 680, 220 S.E.2d

558 (1975). Because a petitioner for habeas corpus is not required to pursue his claims to what will surely be a negative result, *Perry v. Blackledge*, 453 F.2d 856 (4th Cir. 1971), the petitioner has exhausted state remedies despite the failure to raise these issues on appeal.

Therefore, petitioner's claims are properly presented for decision here.

The Supreme Court of the United States has declared that the due process clause of the Fourteenth Amendment to the Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970). In addition, the Court has held that the prosecution may not shift the burden on an ingredient of the offense by presuming that ingredient upon proof of another element of the offense. "Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." *Patterson v. New York*, 432 U.S. 197, 215, 97 S.Ct. 2319, 2330, 53 L.Ed.2d 281 (1977). [There is, of course, an exception to this standard in that a jury may be allowed to infer a fact from a proven fact where it may be said beyond a reasonable doubt or that it is more likely than not that the inferred fact exists when the proven fact exists. *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). For example, the Court has upheld inferences that possession of heroin indicates knowledge that the heroin was imported, *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and that unexplained possession of recently stolen property indicates that the possessor knew that the property was stolen. *Barnes v. United States, supra.*] The Court has struck down inferences where it could not be said that the inferred fact was more likely than not to flow from the proven fact, *United States v. Romano*, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965) (presence at a whiskey still could not support infer-

ence of possession, custody, or control of the still); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969) (possession of marijuana could not support inference of defendant's knowledge of illegal importation of the marijuana). The Court has declined to decide whether all inferences must exist beyond a reasonable doubt or only be more likely than not to exist after the proof of the fact from which inferences are drawn. *Leary v. United States, supra; Barnes v. United States, supra.*

The Supreme Court of North Carolina has expressly recognized a contention similar to plaintiff's in *Bame v. Palmer Stone Works*, 232 N.C. 267, 273, 59 S.E.2d 812 (1950). In that suit, for damages based upon alleged negligence, the record showed that the trial judge (Susie Sharp, now Chief Justice of the Supreme Court of North Carolina), had given the jury an instruction that "It is important for you to understand at the outset, gentlemen, what is meant by negligence *as implied in cases of this character.*" [Emphasis added.] The Court held that this instruction was error, and awarded a new trial, the rationale being as follows:

"Appellant contends that the reasonable meaning of this portion of the charge is that on the facts which the jury had heard from the witnesses, an implication or presumption arose that the defendant was negligent. In this connection the word 'implied,' as defined by Webster, means 'virtually involved or included; involved in substance; inferential; tacitly conceded.' Hence, when the word 'implied,' as used by the court, is given this meaning, it is prejudicial to defendant. For no such concession is made, nor is negligence implied."

■ Petitioner was not harmed by the erroneous instruction that the law implies *malice* from an intentional killing with a deadly weapon. He was found not guilty of second degree murder; and malice is not a necessary element of voluntary manslaughter; therefore the error as it relates to second degree murder, though perhaps confusing, was harmless or, at worse, of less than constitutional dimension.

■ "Unlawfulness" is, however, a necessary ingredient of voluntary *manslaughter.* The prosecution must prove "unlawfulness" beyond a reasonable doubt. To say the least, there is more than a reasonable doubt under the evidence that the shooting of Chasteen by petitioner was unlawful. When the court charged the jury that "if the state proves an intentional killing . . . the law implies . . . that the killing was unlawful . . . ." he shifted the burden to the criminal defendant to prove lawfulness.

Since all the evidence substantially showed that petitioner shot the decedent under imminent threat of death or severe bodily injury in his own home, it was constitutionally prejudicial to put the burden on Reeves, the petitioner, to rebut that legal implication that his conduct was unlawful.

It is true that later on in the charge the court gave a general instruction that the burden was upon the prosecution to prove beyond a reasonable doubt that the defendant did not act in self-defense. *State v. Hankerson, supra.* However, the existence of a correct instruction does not cure an incorrect instruction unless it can be said that the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). It cannot be said beyond a reasonable doubt that the error was harmless. Where all witnesses testified that the deceased, in Reeves' own home, had precipitated several arguments, had threatened four companions with a shotgun and had threatened to cut their throats with a razor blade, and that the shooting occurred while Chasteen still held the loaded gun and was threatening to shoot Reeves, a normal weighing of that evidence should produce an acquittal. It cannot be said beyond a reasonable doubt that the jurors were not influenced by the erroneous instruction that unlawfulness was "implied" from the shooting by Reeves with a deadly weapon. Petitioner is entitled to a new trial.

. IT IS THEREFORE ORDERED that within sixty (60) days from the filing of this

order, petitioner Reeves shall be re-tried for voluntary manslaughter or released from custody. The Attorney General is directed to report the intended course of action within thirty (30) days from the filing of this order.