40969.   PENNAMON v. THE STATE.

DECIDED OCTOBER 14, 1964.

*Peter J. Rice,* for plaintiff in error.

*George D. Lawrence, Solicitor General,* contra.

HALL, Judge. The question presented is whether the evidence authorized the jury to find that the defendant shot the deceased, not under circumstances where there was actual or apparent necessity to do so to save her own life or to prevent the commission of a felony upon her, but in hot blood engendered by the deceased's conduct toward her.

The witness' testimony as well as the defendant's statement, was that on the day of the homicide the deceased came home around 7 a.m., after staying out all night, and quarreled with the defendant. About 12 the defendant walked to the store and when she returned the deceased was outside and she went to the kitchen to make a fire in the stove. The deceased came in and accused her of having been at a beer joint. She replied that she had not been at the beer joint, and he started choking her. They scuffled and got on the porch and the deceased said "I'll kill you." They continued scuffling into the bedroom and went to the bed. The witness did not see what happened afterwards in the bedroom, but heard a shot and saw the defendant come out of the room with the gun in her hand. The deceased's pistol was customarily kept under the pillow or mattress. The deceased had shot the defendant previously, and the defendant had also shot the deceased previously. In her statement the defendant said, "I beat him to the gun, I had moved the gun because he didn't stay at home that night, and I put the gun under my pillow and that's how I beat him to the gun; when I got the gun he said I'll kill you, said put that gun up, and I said don't you come on me; so he started on me and I throwed the gun up when he came and I shot him." The deceased's father testified that he and the defendant spoke to each other on the street earlier in the day and she said "I'm going to the chain gang; then she turned and said I'm going down to Mr. Arthur Carpenter's to work," and she seemed to be teasing. The defendant stated at the trial, that she said to the deceased's father, "I am going down to Mrs. Carpenter's to work, I said Miss Lula always called it chain gang."

The evidence, with or without the defendant's statement does not support a finding that the defendant showed any willingness

or intention to engage in mutual combat with the deceased, but rather shows that from the time the deceased began choking her she was struggling to repel his attack which, together with his threat to kill her and the knowledge that the gun was in the bedroom, showed an apparent necessity to shoot to save her own life. *Rutland v. State*, 46 Ga. App. 417 (167 SE 705); *Odom v. State*, 106 Ga. App. 60 (126 SE2d 472).

In *Brown v. State*, 87 Ga. App. 548 (74 SE2d 554), where a conviction of voluntary manslaughter was upheld, the defendant stated that he had stabbed the deceased after he had made an assault on him with a pair of knucks, and a pair of knucks was found in the deceased's clothing. No witnesses saw the defendant stab the deceased, but there was evidence that shortly after the deceased was stabbed the defendant approached another person with a knife, saying he was going to "get" him too. The court held this evidence tended to show the defendant's state of mind at the time of the homicide. The *Brown* case differs from the present case in that the evidence mentioned was sufficient to support a finding that the defendant stabbed the deceased "in hot blood."

The trial court erred in overruling the general grounds and special grounds of the motion for new trial.

*Judgment reversed. Nichols, P. J., and Russell, J., concur.*