## 51161. HOLLOWAY v. THE STATE.

EVANS, Judge.

Defendant was indicted and tried for the crime of murder. He was found guilty of voluntary manslaughter and sentenced to serve 20 years. Defendant appeals. *Held:*

1. During the entire examination of prospective jurors, the court allowed counsel to examine specific jurors with the effect being considered as asked of each juror. The examination of such jurors by counsel is very broad, "touching any manner, matter or thing which would illustrate any interest of the juror in the cause, . . . the relationship or acquaintance of the juror . . . [and] any fact or circumstance indicating any inclination, leaning or bias which the juror might have respecting the subject matter of the suit . . . and religious, social and fraternal connections of the juror." Code Ann. § 59-705. But the trial judge still retains the discretion to limit the examination to questions dealing directly with the specific case and to prohibit general questions and in particular, those questions of law which the jurors would have to consider and determine from the evidence. Enumerations of error 3, 4, 5 and 7 were too broad and general; hence, the court did not err in sustaining objections to such questions. See *Hill v. State,* 221 Ga. 65 (3), 69 (142 SE2d 909).

2. Enumerations of error 8 through 14 deal with defendant's contention that certain jurors were asked questions on the voir dire which indicated bias, prejudice, or some other reason as to their state of mind, which would suggest they were disqualified. He argues that the trial judge erred in holding these jurors qualified.

But in each and every one of these enumerations it did not appear that "the juror's opinion was shown to be so firm or fixed as to be unyielding." See *Grasham v. Southern R. Co.,* 111 Ga. App. 158 (4) (141 SE2d 189), and at page 160. No error appears in view of the above. Also see *Thacker v. State,* 226 Ga. 170 (2), 174 (173 SE2d 186); *Butler v. State,* 231 Ga. 276, 278 (3) (201 SE2d 448).

3. Enumeration No. 6 contends the court erred in not allowing defendant to ask the jurors, "Do you have any feeling against a person who uses a gun to protect himself?" No error is shown here. The question was too broad and general to show that harm resulted to defendant. Many persons are against violence of any kind, and particularly against one person shooting another. There were many ways in which the defendant's counsel could have approached this matter so as to render same not objectionable. If the juror had a feeling against a person who uses a gun to protect himself, that would not have disqualified him as a juror. He still could have been fair and impartial in consideration of all the evidence. For instance, one person might slap another with his hand and the defendant might use a gun to protect himself. If so, the defendant would have been in violation of the law because the means of protection were disproportionate to the assault made upon him. See Code § 26-902; *Harper v. State,* 127 Ga. App. 359, 360 (193 SE2d 259). Or it may be that one man might have a knife in his hands and stand twenty paces away from the defendant, who pulls out a gun and "protects himself" by shooting and killing his adversary. Most people would have a feeling against that kind of conduct by the defendant. We repeat that the question was much too broad.

4. As to peremptory strikes, defendant used only 19 of his 20 strikes, having one strike left over, and he cannot claim harmful error because of not being allowed to ask questions of any particular juror to learn various matters

about the juror's background. *Evans v. State,* 222 Ga. 392, 401 (14) (150 SE2d 240).

5. The transcript shows that defendant Holloway and Crumbley, who was shot and killed by Holloway, were in Holloway's yard and engaged in an argument and altercation. Defendant contended the argument revolved around an accusation by Crumbley that Holloway had tried to kill him at a fish pond some time earlier, which Holloway stoutly denied. Defendant and Crumbley began fighting; defendant disengaged himself and went into his house, and Crumbley also came into the house with a knife in his hands, and it was at this time that defendant grabbed his gun and started shooting; and one of the shots pierced a vital spot in Crumbley's body and killed him. There were many discrepancies in defendant's story, but we are setting it forth above in the way that is most favorable to defendant's contentions, despite the discrepancies.

Defendant contended he shot from a downward position upward, but expert testimony was introduced to show that the trajectory of the bullet in Crumbley's body ranged downward, thus indicating that defendant Holloway could have been standing over Crumbley at the time of the fatal shot. Defendant's first story was that Crumbley took his jacket off right after he got out of the truck while in the yard. When confronted with the fact that the jacket had a bullet hole in it, defendant changed his story and claimed that defendant himself took the jacket off Crumbley after Crumbley had been shot. He gave no reason for such action except that he wanted to learn how badly Crumbley was shot.

The evidence amply warranted a verdict of guilty of manslaughter; and further authorized the jury to disbelieve defendant's testimony because of being contradicted by prior contradictory statements about when and who took the jacket off the deceased and as to whether the shots ranged downward or upward. Code § 38-1803. See also *Nolen v. State,* 124 Ga. App. 593, 594, 597 (184 SE2d 674).

6. The jury is the sole arbiter of the weight to be given the testimony of each witness; and may believe a part of what one witness swears and disbelieve another

part; may believe one witness in preference to a thousand who swear in opposition to his testimony. See Code §§ 38-104, 38-105, 38-106, 38-107. Also see *Jackson v. State,* 13 Ga. App. 147 (1) (78 SE 867); *Willis v. State,* 63 Ga. App. 262 (1) (10 SE2d 763); *Largin v. State,* 77 Ga. App. 111, 119 (47 SE2d 895); *Cox v. State,* 172 Ga. 482 (3) (158 SE 17).

7. Having considered each and every one of defendant's enumerations of error, and finding no reversible error, the judgment is affirmed.

*Judgment affirmed. Bell, C. J., Pannell, P. J., Quillian, Webb and Marshall, JJ., concur. Deen, P. J., Clark and Stolz, JJ., dissent.*

ARGUED SEPTEMBER 10, 1975 — DECIDED DECEMBER 2, 1975 — REHEARING DENIED DECEMBER 19, 1975 — 

*Roberts, Roberts & Rainwater, Guy Velpoe Roberts, Jr.,* for appellant.

*D. E. Turk, District Attorney,* for appellee.

DEEN, Presiding Judge, dissenting.

I fully concur in all that the majority holds in Divisions 1, 2, 3 and 4. I disagree, however, with the majority's opinion as to the general grounds and would reverse the judgment of conviction as not being supported by the evidence.

The record reveals the following evidence was elicited at the trial: Appellant phoned the sheriff's office to report an incident at his father's home, where he was caretaking during his father's stay in the hospital. The deputy sheriff responded to the call and found the decedent lying in the doorway of the house. The appellant made a statement to the officer to the effect that the deceased was drunk, had cursed him and begun a fight, and that the decedent had followed him into the residence when he tried to disengage himself from the fight. Appellant further stated that the deceased had attacked him with a knife and that he had been forced to shoot in self defense. The police officer testified that the dead man had one gunshot wound in his left shoulder and a cut on

his forehead which was not visibly bloody. Grass and dirt were found on the inside of the back of the deceased's trousers and his body had been covered with a sheet. The day was rainy and the officer further testified that the appellant was wet, there were scratches on his stomach, his shirt had been torn and his undershirt ripped and there were signs of a scuffle on the porch. An autopsy revealed that the trajectory of the bullet was inconsistent with the appellant's version of how he shot his alleged assailant. A further discrepancy developed between the appellant's story and the physical evidence in that appellant originally related that the deceased had removed his coat prior to the attack but the coat itself revealed a bullet hole which was described in expert testimony as having been made at point-blank range. Appellant also noted that the spread he had used to cover the body had been taken from the house but the widow testified that it was identical to the one which had been used by her husband in his truck and that it had been missing since the day of her husband's death.

Based upon this evidence the state urged that the appellant had murdered the decedent in the cab of his truck (relying on testimony that the trajectory of the bullet would be "consistent" with such an hypothesis), had dragged the body to the house (relying on the testimony that grass and dirt were discovered in the back of the dead man's trousers and testimony that "possibly and probably" the cut to the forehead had been inflicted after the gunshot wound) and had fabricated the story of self-defense (relying on the inconsistencies in appellant's statement and the other evidence presented). The appellant elicited testimony that a thorough investigation of the truck was made but there was no evidence found which would indicate a homicide had been committed there and that blood found near the truck was analyzed as "canine blood." Since the day was rainy, no signs of a body having been dragged were found. The knife which appellant alleged to have been used by the dead man to attack him with was discovered but no tests for fingerprints were made; a subsequent investigation failed to establish whether it belonged to the appellant or to the deceased.

The only evidence offered by the state to prove that the appellant had committed the homicide was the testimony of officers that the appellant had made statements to them admitting the homicide and the testimony of the appellant himself that he shot the deceased in self-defense, and at a time when the decedent was advancing upon him with a knife. Thus the evidence relied upon by the state to prove the homicide and the appellant's evidence and his statement likewise showed circumstances of mitigation or justification. It is therefore manifestly clear that a verdict of guilty of murder, had it been returned, would not have been allowed to stand. *Jones v. State*, 212 Ga. 195 (91 SE2d 514). When, however, the jury returned a verdict of guilty of manslaughter, the appellant was in effect acquitted of the crime of murder. Was the evidence sufficient to support a verdict of guilty of manslaughter or was a verdict of justifiable homicide demanded? *Nolen v. State,* 124 Ga. App. 593 (184 SE2d 674). I am aware that questions of fact are exclusively for determination by the jury, but the question of whether or not there is any evidence to support a verdict is one of law and that if, under all legal and logical deductions from the evidence, a verdict is unwarranted, this court may and should set it aside. *Rutland v. State,* 46 Ga. App. 417 (167 SE 705). Here the evidence offered by the state to prove that the appellant unjustifiably took the life of another was totally circumstantial. The inconsistencies in the appellant's statements concerning the dead man's coat, the location of the spread and the position of the deceased when he was shot go to his credibility and the jury was within its prerogative to disbelieve him on these points and to find that the coat was being worn at the time of death, that the spread came from the truck and that the appellant was not on his knees when the shot was fired; however, to sustain a conviction of manslaughter there must have been evidence to authorize the jury to find that the appellant shot the deceased, not under circumstances where there was actual or apparent necessity to do so to save his own life, but in hot blood engendered by the deceased's conduct toward him. *Pennamon v. State,* 110 Ga. App. 475 (138 SE2d 890). A careful study of the record reveals that the only theory upon which the state can

argue that voluntary manslaughter was proved is one of mutual combat — that the evidence supports a finding that a fight with dangerous or deadly weapons took place between the appellant and the deceased, when both were at fault and mutually willing to fight because of a sudden quarrel. *Weatherby v. State,* 213 Ga. 188 (4) (97 SE2d 698). Appellant urges that he was acting in self-defense to ward off an unprovoked attack upon him. "The essential ingredient, mutual intent, in order to constitute mutual combat, must be a willingness, a readiness, and an intention upon the part of both parties to fight. Reluctance, or fighting to repel an unprovoked attack, is self-defense and is authorized by the law, and should not be confused with mutual combat." *Mathis v. State,* 196 Ga. 288, 291 (26 SE2d 606). When one is reacting to repel an attack by an aggressor and his actions are prompted solely to protect his life, he is not acting under the "excitement of passion," because such acts are self-defense which are justified in the eyes of the law. *Odom v. State,* 106 Ga. App. 60 (126 SE2d 472). It is true that the only evidence produced by the appellant to show that the homicide was perpetrated in self-defense was his own statement and testimony and that there was expert testimony that the decedent could not have been shot in the manner alleged. This does not however disprove that the shot was fired in self-defense; it merely is some evidence that the appellant was not in the position he claimed when the shot was fired. By the same token the state relied exclusively on the statement and testimony of the appellant to show an essential element of the crime of manslaughter (here mutual combat), and where no other evidence is produced to show such element, the evidence does not authorize a verdict of guilty. *Wall v. State,* 5 Ga. App. 305 (63 SE 27). Appellant's statement imported that there was a necessity for his actions — the need to protect his own life. "It would be manifestly unfair to hold a person criminally bound by a statement which admits the commission of an act and in the same breath legally justifies or excuses the same." *Owens v. State,* 120 Ga. 296, 299 (48 SE 21). Here there was no evidence other than the appellant's statement and testimony and this evidence legally justified the homicide. The state did not prove the

appellant provoked the deceased into making an attack. There was no evidence that the appellant had any intent toward mutual combat, or that the appellant showed a willingness to fight. *Pennamon v. State,* 110 Ga. App. 475, supra.

And yet, even assuming that the evidence authorized an inference that the appellant acted in a sudden "heat of passion," the evidence before the jury would only present two inconsistent theories, one of guilt and one of innocence. Appellant's theory is that the deceased provoked a fist fight, that they began to roll in the mud and that when the appellant tried to flee to the house the deceased drew a knife and was killed in self-defense. The state's theory is that the appellant committed the crime outside the house as the result of a "sudden, violent, and irresistible passion," dragged the body into the house and fabricated the story of self-defense. "Where the facts in evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence." *Davis v. State,* 13 Ga. App. 142 (1) (78 SE 866). Thus even assuming the state had proved with sufficient evidence a theory of voluntary manslaughter, which it did not, we should be compelled to reverse because the entirety of that evidence and all reasonable deductions therefrom present two theories and that which is consistent with innocence must be accepted.

The majority holds that this evidence warranted a verdict of guilty of manslaughter. If this is true then the majority has overruled *Wall v. State,* 5 Ga. App. 305, supra, and should so indicate. *Price v. State,* 108 Ga. App. 581, 585 (133 SE2d 916) holds that *Wall* does not apply where there is evidence of facts and circumstances which are contradictory to the statement made by the defendant. In such a case the jury can believe certain parts of the defendant's statement and reject other parts, and combine the parts believed with the evidence of facts and circumstances which they believe in order to arrive at a logical verdict. The majority holds that the jury was authorized to disbelieve appellant's testimony because of his contradictory statements. I agree that the jury could

disbelieve the appellant as to the deceased's wearing of the coat, the location of the spread to cover the body and his location when the fatal shot was fired. *Price* does not stand for the proposition that a jury can disbelieve a defendant's story and then convict him of manslaughter without some evidence to show that the shot was fired in "hot blood" and not under circumstances where there was an actual or apparent necessity to do so to save his own life. *Pennamon v. State,* 110 Ga. App. 475, supra. In this state I believe, though the majority does not, that there must be evidence to support a criminal conviction even though the defendant's story may be contradictory. Where is the evidence to show the death occurred in the truck and not the house? There is none. Where is the evidence that the deceased was shot in the yard? Canine's blood does not seem to me to be sufficient proof of this. Where is the evidence to show that the deceased was killed in any manner other than in self-defense? There is none. The contradictions in the appellant's story in no way disprove his explanation that the shot was fired in self-defense. To my mind the fact that a defendant's story may prove to be contradicted does not remove the state's burden to show at least *some* evidence of "hot blood." The fact that a defendant's explanation may be contradicted in some respects does not obviate the necessity for proof of the commission of a crime in order to sustain a conviction. Here the only evidence which could possibly be contrary to the appellant's statement was the coat, the sheet and the bullet's trajectory. If evidence that the deceased was wearing a coat, was covered by a sheet and was not shot in exactly the manner described is sufficient evidence to show "hot blood" when the defendant's statement is correct in other respects and there is no other contradicting testimony, then there is little need for a defendant convicted in a criminal case to appeal his conviction to this court on the general grounds.

It is a woeful day when the state seeks a conviction of murder on such scant evidence. It is an even sadder day when a jury returns a verdict of guilty of manslaughter based upon so little evidence. But it is perhaps the most regretful day of all when an appellate court gives judicial sanction to such a result.

For reasons stated above, I must respectfully dissent from the majority's affirmance of this conviction.

I am authorized to state that Judges Clark and Stolz concur in this dissent.