**M. W. HOLLOWAY, Petitioner,**

v.

**Clay E. McELROY, Respondent.**

**Civ. A. No. 78–30–AMER.**

United States District Court,
M. D. Georgia,
Americus Division.

Aug. 22, 1979.

---

1364

Lawrence W. Roberts, Roberts, Roberts & Rainwater, Cordele, Ga., for petitioner.

Arthur K. Bolton, Atty. Gen., John W. Dunsmore, Jr., Asst. Atty. Gen., State of Ga., Atlanta, Ga., for respondent.

OWENS, District Judge:

Petitioner M. W. Holloway having been convicted in Crisp County Superior Court of voluntary manslaughter for the March 18, 1975, killing of Joe Crumbley and having had that conviction and his sentence of twenty years affirmed both on direct appeal, 137 Ga.App. 124, 222 S.E.2d 898 (1975), and after collateral attack and state habeas procedures, 241 Ga. 400, 245 S.E.2d 658 (1978), petitioned this court for a writ of habeas corpus, 28 U.S.C.A. § 2254, alleging that he was unconstitutionally convicted because there is not sufficient evidence to support his conviction for manslaughter and because the trial court's charge to the jury unconstitutionally shifted the burden of proving every essential element of the offense from the prosecution—upon whom it constitutionally rests—to the defendant-petitioner.

I. *Sufficiency of Evidence of Guilt.*

The standard by which this court must evaluate the evidence in a state criminal trial to determine whether the petitioner has been accorded constitutional due process was recently reformulated by the Supreme Court of the United States in *Jackson v. Virginia,* —— U.S. ——, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Instead of determining whether or not there is "any evidence" to support petitioner's conviction, the court must now go further and satisfy itself that the evidence in the record could reasonably support a finding of guilt be-

yond a reasonable doubt. The question therefore is not a question of the presence of evidence in the record but of the sufficiency of that evidence.

Having carefully read the entire trial transcript in light of this revised standard, it is this court's considered judgment for the reasons well stated by Georgia Court of Appeals Judge Braswell Deen in his dissenting opinion, concurred in by Judges Clark and Stolz, *Holloway v. State*, 137 Ga.App. 124, 127, 222 S.E.2d 898 (1975) (Deen, J., dissenting), that the evidence in this record could not and does not reasonably support a finding of guilt beyond a reasonable doubt. Judge Deen's opinion is specifically incorporated into this opinion and is attached hereto as an appendix. This court notes that the state's evidence, elicited only through defense cross-examination of the state's witness, the investigating G.B.I. agent, revealed that the deceased victim had a blood alcohol content of 0.12 at the time of death. (R. 162). Under Georgia law 0.10 blood alcohol content gives rise to a presumption that the person was under the influence of alcohol. Ga.Code Ann. § 68A–902.1(b)(3). This fact lends support to the petitioner's version that the victim came to the house intoxicated and began a fight. In this court's considered judgment this conviction for manslaughter was not supported by evidence that would rationally lead to the conclusion of guilt beyond a reasonable doubt. It must therefore, be set aside.[1]

### II. *Trial Court's Instructions.*

An even more compelling defect in the petitioner's conviction is found in the trial court's jury charge. The court, as respondent suggested, has considered the trial court's charge as a whole and for reasons hereinafter stated finds it constitutionally defective on three related bases. First, by its liberal use of presumptions the trial court's charge has impermissibly invaded the fact finding function of the jury by conclusively presuming the petitioner to be guilty. Secondly, the instruction effectively relieved the prosecution of the burden of proving each and every element of the crime beyond a reasonable doubt and shifted to the petitioner the burden of disproving his guilt. Finally, the charge impermissibly placed upon the petitioner the burden of proving self-defense.

The critical portions of the charge are as follows:

> I charge you every person is *presumed to be of sound mind and discretion,* but the presumption may be rebutted.

> I charge you that the acts of a person of sound mind and discretion are *presumed to be the product of the person's will,* but the presumption may be rebutted.

> A person of sound mind and discretion is *presumed to intend the natural and probable consequences of his acts,* but the presumption may be rebutted.

> I charge you that a person will *not be presumed* to act with criminal intention, *but the trier of facts, and that's the Jury, may find such intention* upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. (R. 251–52).

> \* \* \* \* \* \*

> I charge you further that the law *presumes every intentional homicide to be malicious* until the contrary appears from circumstances of alleviation, of justification, of mitigation, or excuse and the *burden is upon the slayer* whenever an intentional homicide has been proven to make out such circumstances to the satisfaction of the Jury unless they appear from the evidence produced against him. If, however, the proof, if there be any, that shows the homicide itself discloses that the homicide was done without malice, this presumption that the homicide is malicious does not exist, but if the accompanying proof, if there be any, does not disclose that the killing was done without malice, then it is incumbent upon the

---

1. Since the petitioner's conviction is being set aside for insufficiency of the evidence to support his conviction, the Double Jeopardy Clause of the Fourteenth Amendment precludes his retrial. See, *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978).

slayer to show that it was done without malice.

I charge you, however, that this presumption which arises against the slayer where an intentional homicide is shown does not arise against the defendant unless it be first shown to a moral and reasonable certainty and beyond a reasonable doubt that the defendant is the intentional slayer. Unless it appears beyond a reasonable doubt and to a moral and reasonable certainty that this defendant is the intentional slayer, this presumption does not arise in this case and has no application to the case.

I charge you that when a killing is proved to be the intentional act of the defendant, the presumption of innocence with which he enters upon the trial is removed from him and the burden is upon him to justify or mitigate the homicide unless the evidence introduced against him shows justification or mitigation or excuse, but as I have charged you heretofore, the evidence in justification or mitigation or excuse may be found in the evidence introduced against him. If there be no evidence introduced to show justification or mitigation or excuse, and if the evidence introduced shows the homicide committed as charged in the Indictment, the burden would then be upon the defendant to show justification or mitigation or excuse.

(R. 253–254). (Emphasis supplied).

A. *Trial Court erred in instructing that the petitioner is presumed to intend the consequences of his acts.*

■ On June 18, 1979, the United States Supreme Court decided *Sandstrom v. Montana,* —— U.S. ——, 99 S.Ct. 2450, 61 L.Ed.2d 39. That decision has been called to the attention of counsel, commented upon by counsel and considered by this court in reaching its conclusion on this issue. In *Sandstrom,* the defendant was tried in state court for murder; he admitted killing the victim but defended on the ground that he lacked the mental capacity to have "purposely and knowingly" killed her. The petitioner was nevertheless convicted of deliberate homicide, and the con-

viction was affirmed by the Montana Supreme Court. On certiorari to the United States Supreme Court, the petitioner challenged the constitutionality of the trial court's instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts." —— U.S. at ——, 99 S.Ct. at 2453, 61 L.Ed.2d at 44.

The proper analysis of the nature and effect of presumption according to the Court "requires careful attention to the words actually spoken to the jury . . . for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable jury could have interpreted the instruction." *Id.* —— U.S. at ——, 99 S.Ct. at 2454, 61 L.Ed.2d at 45. The Court rejected the state's argument that the charge merely created a permissible inference, holding that a reasonable juror might well have viewed the instruction as mandatory. The Court also rejected the argument that the instruction though mandatory merely shifted the burden to the defendant to produce "some evidence" to rebut the presumption that he intended the ordinary consequences of his voluntary acts. The court noted that the jury was never told that the presumption could be rebutted by some evidence, or even that it could be rebutted at all.

[A] reasonable jury could well have interpreted the presumption as "conclusive," that is, not technically as a presumption at all, but rather as an irrebuttable direction by the court to find intent once convinced of the facts triggering the presumption. Alternatively, the jury may have interpreted the instruction as a direction to find intent upon proof of the defendant's voluntary actions (and their "ordinary" consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than "some" evidence—thus effectively shifting the burden of persuasion on the element of intent.

*Id.* —— U.S. at —— ———, 99 S.Ct. at 2456, 61 L.Ed.2d at 46–47.

Similarly in the case at hand the trial court instructed the jury that a "person is *presumed* to be of sound mind and discretion;" that "the acts of a person of sound mind and discretion are *presumed* to be a product of the person's will;" and that "a person . . . is *presumed* to intend the natural and probable consequence of his acts, but the presumption may be rebutted." The sum of these three propositions is a presumption substantially equivalent to the one declared unconstitutional in *Sandstrom* except that the jury was told that the presumptions could be rebutted. This inclusion does not, however, save the instruction from its inherent constitutional infirmity. While the inclusion of the fact that the presumption may be rebutted, might arguably remove it from the category of a mandatory or conclusive presumption, the trial court, nevertheless, failed to explain how the presumption might be rebutted, whether by some evidence, a preponderance of the evidence or some other quantum of proof. The effect was to leave the jury with an incomplete statement of the law which in this court's view is no better than had the trial court failed altogether to include the fact that the presumption could be rebutted. Consequently, a reasonable jury might well have construed the presumption as conclusive, directing it to return a verdict of guilt "once convinced of the facts triggering the presumption." *Sandstrom, supra,* —— U.S. at ——, 99 S.Ct. at 2456, 61 L.Ed.2d at 47. Even if the presumption is not deemed conclusive, the court's failure to explain that the presumption could be rebutted by some evidence rather than by some greater quantum of proof may well have shifted the burden of persuasion of his innocence to the petitioner. Either possibility is constitutionally impermissible.

B. *The trial court's instruction impermissibly shifted the burden of persuasion of each and every element of the crime from the State to the petitioner.*

A related ground for setting aside the conviction is found in that portion of the instruction previously quoted which states that every intentional homicide is presumed to be malicious until the contrary appears and that the burden is upon the defendant to prove circumstances of alleviation, excuse or justification to the satisfaction of the jury. (R. 252–54).

The petitioner argues that the charge shifted the burden of persuasion to him to disprove the unlawfulness of the homicide by showing that it occurred in self-defense. This shifting of burden effectively relieved the prosecution of its duty to prove the critical elements of the crime beyond a reasonable doubt.

Recent decisions of the United States Supreme Court make it clear that the due process clause of the Fourteenth Amendment requires that the prosecution prove each and every element of the crime beyond a reasonable doubt. *Sandstrom, supra; Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). The principles established in these cases have been held to have retrospective application. *See, Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Ivan V. v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972). A state, however, may place the burden of proof of an affirmative defense on the defendant. *Patterson v. New York, supra.* Therefore how the state defines the crime and how it allocates the burden of proof of affirmative defenses are of critical importance to this inquiry.

■ Georgia defines murder as follows:
(a) A person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being. Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof. Malice shall be implied where no considerable provocation appears, and where all the circumstances of the killing show an abandoned and malignant heart.

Ga.Code Ann. § 26–1101. The critical elements of the crime therefore are (1) unlawfully (2) causing the death of another human being (3) with malice aforethought. At the time of the petitioner's trial, Georgia nominally placed the burden of proving self-defense on the defendant. *See, McClendon v. State,* 231 Ga. 47, 199 S.E.2d 904 (1973). This, however, is not simply a case of the trial judge's instruction placing the burden of proof of an affirmative defense on the accused. The real objection to the charge lies with the allocation of the burden of proving or disproving the elements of the crime between the state and the accused. In essence the court instructed the jury that once the prosecution proved that the homicide was the result of an intentional act, the essential elements of unlawfulness and malice aforethought may be presumed thereby shifting the burden to the accused to negate or disprove those elements to the satisfaction of the jury.[2] The adverse impact of this presumption is accentuated by the fact that once the accused pleads self-defense he admits that the homicide was intentional, thereby relieving the state of any burden of proof.

■ This situation is precisely the same as the one disapproved in *Sandstrom,* supra. The trial court may not instruct the jury to presume elements of the crime from the proof of the slaying and additional facts not themselves establishing the elements of unlawfulness and malice, and then leave it to the accused to prove that unlawfulness and malice aforethought were lacking from his actions.

In *Cole v. Stevenson,* 447 F.Supp. 1268 (E.D.N.C.1978), a case precisely on point, the district court held unconstitutional North Carolina's burden-shifting charge which is the same as the charge in this case. See, *State v. Hankerson,* 288 N.C. 632, 220 S.E.2d 575, *rev'd on other grounds* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977).

. . . North Carolina allows the presumption of "malice" and "unlawfulness" to be raised when the state proves a wound was "intentionally inflicted upon the victim which proximately caused death." By employing the presumption of unlawfulness, the state does far more than "create an inference that procedurally shifts the burden of going forward with the proof" . . . instead, the accused must prove by a "preponderance" that he acted in self-defense. The state, therefore, does not bear the burden to first prove unlawfulness but can merely rest upon the presumption. Also, the North Carolina self-defense charge allows the presumption of one ingredient of an offense when another is shown. This is a far cry from the New York law discussed in *Patterson* which requires the state to prove *each* element of the murder charge without presuming or inferring any facts, and only when each of these' is proven does the defendant bear the burden of proving an affirmative defense.

*Cole v. Stevenson, supra,* at 1277. Since Georgia law has chosen to include unlawfulness and malice aforethought as elements of the crime of murder, the prosecution must undertake to prove all these elements beyond a reasonable doubt without benefit of presumptions at least when some evidence has been adduced to negate those elements.[3] For the foregoing reasons the court's instruction violated the requirement mandated by constitutional due process that

---

**2.** The standard of proof, proof to the satisfaction of the jury, is equivalent to proof by a preponderance of the evidence. Therefore, the burden is on the petitioner to do more than present "some evidence" to contradict the presumption. He bears the burden of persuasion on the question. See, *State v. Hankerson,* 288 N.C. 632, 220 S.E.2d 575, rev'd on other grounds 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1970).

**3.** The court does not hold that the jury may not be instructed that they may infer unlawfulness and malice from the proven fact of an intentional homicide in all cases. The duty may be placed upon the accused to produce *some evidence* of excuse, justification or mitigation before the obligation devolves to the prosecution to prove unlawfulness and malice beyond proving an intentional homicide. See *Mullaney, supra,* n. 28; *State v. Hankerson,* 288 N.C. 632, 220 S.E.2d 575, 589 (1977). In this case, however, the petitioner did adduce sufficient evidence of self-defense or justification to trigger the prosecution's burden to prove unlawfulness and malice.

the prosecution prove every element of the crime beyond a reasonable doubt.[4]

C. *The trial court's instruction impermissibly placed the burden of proof of self-defense on the petitioner.*

■ Although the trial court's instruction of the elements of self-defense does not allocate the burden of proof to either party, the murder charge can reasonably be read as placing the burden of proof of self-defense on the petitioner. While *Patterson v. New York, supra,* would appear to allow a state to place the burden of persuasion of affirmative defenses, including self-defense, upon the defendant, a fundamental conflict exists in allocating to the prosecution the burden of proving unlawfulness and, at the same time, allocating to the accused the burden of proving self-defense; self-defense and "unlawful" being mutually exclusive determination of the same question, *i.e.,* justification *vel non* for the crime. The problem has been succinctly stated as follows:

In spite of *Patterson's* apparent dilution of the force of *Mullaney,* recent state and federal court opinions are nearly unanimous in their view that self-defense, while an "affirmative plea", is not a "true" affirmative defense, i. e., while a defendant may be required to raise the issue of self-defense by some evidence, once such issue is raised, the prosecution must prove beyond a reasonable doubt that the crime charged was not committed in self-defense. The rationale behind this view is that since an essential element of most crimes, as defined by statute or common law, is that an act to be criminal must be "unlawfully" done, and since an act done in self-defense is, by definition "lawful", the prosecution must prove the absence of self-defense in order to prove an essential element of the crime that is, unlawfulness. The obverse of the statement is more easily stated, *viz,* to require the defendant to prove self-defense—(lawfulness)—would relieve the prosecution from proving an essential element of the crime charged—(unlawfulness).

*Porter v. Leeke,* 457 F.Supp. 253, 255 (D.S. C.1978).

After the petitioner's conviction the Georgia Court of Appeals reached the same conclusion holding that:

. . . a finding of self-defense negates the essential element of unlawfulness within the meaning of our murder and manslaughter statutes. For the State to meet its required burden of proving the element of unlawfulness, it must therefore prove beyond a reasonable doubt the absence of justification.

*Johnson v. State,* 137 Ga.App. 740, 742–43, 224 S.E.2d 859, 861 (1976).[5] From the interrelationship of the unlawfulness requirement of the offense and the nature of the self-defense the court reaches the inescapable conclusion that the absence of self-defense is an element of the crime which the prosecution must disprove beyond a reasonable doubt.[6] Therefore the instruction in

---

4. The respondent argues that since the petitioner was convicted of voluntary manslaughter rather than murder, *Mullaney* and its progeny are inapplicable because self-defense and justification bear no direct relationship to the elements of voluntary manslaughter. Under Georgia law, Ga.Code Ann. § 26–1102, voluntary manslaughter disposes of only the malice aforethought element of murder but retains the "unlawfulness" element. Self-defense or justification, therefore, is also a defense to voluntary manslaughter. *Johnson v. State,* 137 Ga. App. 740, 224 S.E.2d 859, *vacated and remanded,* 237 Ga. 276, 227 S.E.2d 345, *rev'd on other grounds* 140 Ga.App. 343, 231 S.E.2d 75 (1976); *Reeves v. Reed,* 452 F.Supp. 783 (W.D.N.C. 1978).

5. Although *Johnson* was vacated by the supreme court, 237 Ga. 276, 227 S.E.2d 345

(1976), and reversed on remand by the court of appeals, 140 Ga.App. 343, 231 S.E.2d 75 (1976), on the ground that a supreme court decision abolishing all burden-shifting charges had prospective application only, *see State v. Moore,* 237 Ga. 269, 227 S.E.2d 241 (1976), the holding was never disapproved. This court feels constrained to adopt the first *Johnson* decision especially since the United States Supreme Court has held that state courts might apply changes in state decisional law precipitated by *Mullaney* retrospectively. *Hankerson v. North Carolina,* supra. *See also Commonwealth v. Lynch,* 477 Pa. 390, 383 A.2d 1263 (1978).

6. *See Berrier v. Egeler,* 583 F.2d 515 (6th Cir. 1978) (absence of self-defense is an element of murder under Michigan law which prosecution must prove); *In re Doe,* R.I., 390 A.2d 920, 925 (1978) (". . . *Mullaney* prohibits a state

question unconstitutionally shifted the burden of persuasion from the prosecution to the petitioner.

■ It remains to be determined whether the erroneous instructions are nevertheless harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The only witness to the homicide was the defendant himself and the state's case otherwise consisted of circumstantial evidence. There were circumstances supporting the self-defense claim. The shooting occurred on the premises of the temporary residence of the defendant. The victim came to the house voluntarily; the petitioner did not seek him out. The victim had been drinking heavily on the day of the shooting. A hunting knife was found near the body of the victim, and there is no evidence to show that it was other than the victim's. All these facts are consistent with the self-defense theory and while there are inconsistencies in the petitioner's version, they do not overwhelmingly preclude the possibility of self-defense. The jury did not find the petitioner guilty of murder as charged, but of voluntary manslaughter, a lesser included offense, a fact which casts doubt on the strength of the state's case and suggests a compromise between murder and acquittal by the jury. Furthermore, three judges of the Georgia Court of Appeals strongly dissented from the affirmance of the petitioner's conviction on the ground that the evidence adduced against the petitioner was insufficient to support the conviction. *Holloway v. State*, 137 Ga.App. 124, 222 S.E.2d 898 (1975) (Deen, J. dissenting, concurred in by Clark and Stolz, JJ.). Under these circumstances this court cannot conclude beyond a reasonable doubt that the erroneous instructions did not contribute to the petitioner's conviction. Finally the correct general instruction on the prosecution's burden of proof beyond a reasonable doubt does not cure the

unconstitutional portions of the charge. *See Sandstrom, supra.*

IT IS THEREFORE ORDERED that the respondent release the petitioner from custody immediately after the judgment of this court becomes final either by failure of the respondent to appeal this judgment or after affirmance upon appeal. The court in the meantime will entertain a motion by the petitioner for admission to bail pending final disposition of the matter upon appeal.

## APPENDIX

*HOLLOWAY v. STATE*, 137 Ga.App. 124, 222 S.E.2d 898 (1975).

DEEN, Presiding Judge, dissenting.

I fully concur in all that the majority holds in Divisions 1, 2, 3 and 4. I disagree, however, with the majority's opinion as to the general grounds and would reverse the judgment of conviction as not being supported by the evidence.

The record reveals the following evidence was elicited at the trial: Appellant phoned the sheriff's office to report an incident at his father's home, where he was caretaking during his father's stay in the hospital. The deputy sheriff responded to the call and found the decedent lying in the doorway of the house. The appellant made a statement to the officer to the effect that the deceased was drunk, had cursed him and begun a fight, and that the decedent had followed him into the residence when he tried to disengage himself from the fight. Appellant further stated that the deceased had attacked him with a knife and that he had been forced to shoot in self-defense. The police officer testified that the dead man had one gunshot wound in his left shoulder and a cut on his forehead which was not visibly bloody. Grass and dirt were found on the inside of the back of the

---

from placing the burden of persuasion on the defendant to prove that he acted in self-defense."). *But see Frazier v. Weatherholtz*, 572 F.2d 994 (4th Cir. 1978); *Williams v. Mohn*, 462

F.Supp. 756 (N.D.W.Va.1978) (under West Virginia law self-defense is an affirmative defense not directly related to any elements of the crime).

deceased's trousers and his body had been covered with a sheet. The day was rainy and the officer further testified that the appellant was wet, there were scratches on his stomach, his shirt had been torn and his undershirt ripped and there were signs of a scuffle on the porch. An autopsy revealed that the trajectory of the bullet was inconsistent with the appellant's version of how he shot his alleged assailant. A further discrepancy developed between the appellant's story and the physical evidence in that appellant originally related that the deceased had removed his coat prior to the attack but the coat itself revealed a bullet hole which was described in expert testimony as having been made at point-blank range. Appellant also noted that the spread he had used to cover the body had been taken from the house but the widow testified that it was identical to the one which had been used by her husband in his truck and that it had been missing since the day of her husband's death.

Based upon this evidence the state urged that the appellant had murdered the decedent in the cab of his truck (relying on testimony that the trajectory of the bullet would be "consistent" with such an hypothesis), had dragged the body to the house (relying on the testimony that grass and dirt were discovered in the back of the dead man's trousers and testimony that "possibly and probably" the cut to the forehead had been inflicted after the gunshot wound) and had fabricated the story of self-defense (relying on the inconsistencies in appellant's statement and the other evidence presented). The appellant elicited testimony that a thorough investigation of the truck was made but there was no evidence found which would indicate a homicide had been committed there and that blood found near the truck was analyzed as "canine blood." Since the day was rainy, no signs of a body having been dragged were found. The knife which appellant alleged to have been used by the dead man to attack him with was discovered but no tests for fingerprints were made; a subsequent investigation failed to establish whether it belonged to the appellant or to the deceased.

The only evidence offered by the state to prove that the appellant had committed the homicide was the testimony of officers that the appellant had made statements to them admitting the homicide and the testimony of the appellant himself that he shot the deceased in self-defense, and at a time when the decedent was advancing upon him with a knife. Thus the evidence relied upon by the state to prove the homicide and the appellant's evidence and his statement likewise showed circumstances of mitigation or justification. It is therefore manifestly clear that a verdict of guilty of murder, had it been returned, would not have been allowed to stand. *Jones v. State*, 212 Ga. 195, 91 S.E.2d 514. When, however, the jury returned a verdict of guilty of manslaughter, the appellant was in effect acquitted of the crime of murder. Was the evidence sufficient to support a verdict of guilty of manslaughter or was a verdict of justifiable homicide demanded? *Nolen v. State*, 124 Ga.App. 593, 184 S.E.2d 674. I am aware that questions of fact are exclusively for determination by the jury, but the question of whether or not there is any evidence to support a verdict is one of law and that if, under all legal and logical deductions from the evidence, a verdict is unwarranted, this court may and should set it aside. *Rutland v. State*, 46 Ga.App. 417, 167 S.E. 705. Here the evidence offered by the state to prove that the appellant unjustifiably took the life of another was totally circumstantial. The inconsistencies in the appellant's statements concerning the dead man's coat, the location of the spread and the position of the deceased when he was shot go to his credibility and the jury was within its prerogative to disbelieve him on these points and to find that the coat was being worn at the time of death, that the spread came from the truck and that the appellant was not on his knees when the shot was fired; however, to sustain a conviction of manslaughter there must have been evidence to authorize the jury to find

that the appellant shot the deceased, not under circumstances where there was actual or apparent necessity to do so to save his own life, but in hot blood engendered by the deceased's conduct toward him. *Pennamon v. State*, 110 Ga.App. 475, 138 S.E.2d 890. A careful study of the record reveals that the only theory upon which the state can argue that voluntary manslaughter was proved is one of mutual combat—that the evidence supports a finding that a fight with dangerous or deadly weapons took place between the appellant and the deceased, when both were at fault and mutually willing to fight because of a sudden quarrel. *Weatherby v. State*, 213 Ga. 188(4), 97 S.E.2d 698. Appellant urges that he was acting in self-defense to ward off an unprovoked attack upon him. "The essential ingredient, mutual intent, in order to constitute mutual combat, must be a willingness, a readiness, and an intention upon the part of both parties to fight. Reluctance, or fighting to repel an unprovoked attack, is self-defense and is authorized by the law, and should not be confused with mutual combat." *Mathis v. State*, 196 Ga. 288, 291, 26 S.E.2d 606, 608. When one is reacting to repeal an attack by an aggressor and his actions are prompted solely to protect his life, he is not acting under the "excitement of passion," because such acts are self-defense which are justified in the eyes of the law. *Odom v. State*, 106 Ga. App. 60, 126 S.E.2d 472. It is true that the only evidence produced by the appellant to show that the homicide was perpetrated in self-defense was his own statement and testimony and that there was expert testimony that the decedent could not have been shot in the manner alleged. This does not however disprove that the shot was fired in self-defense; it merely is some evidence that the appellant was not in the position he claimed when the shot was fired. By the same token the state relied exclusively on the statement and testimony of the appellant to show an essential element of the crime of manslaughter (here mutual combat), and where no other evidence is produced to show such element, the evidence does not authorize a verdict of guilty. *Wall v. State*, 5 Ga.App. 305, 63 S.E. 27. Appellant's statement imported that there was a necessity for his actions—the need to protect his own life. "It would be manifestly unfair to hold a person criminally bound by a statement which admits the commission of an act and in the same breath legally justifies or excuses the same." *Owens v. State*, 120 Ga. 296, 299, 48 S.E. 21, 23. Here there was no evidence other than the appellant's statement and testimony and this evidence legally justified the homicide. The state did not prove the appellant provoked the deceased into making an attack. There was no evidence that the appellant had any intent toward mutual combat, or that the appellant showed a willingness to fight. *Pennamon v. State*, 110 Ga.App. 475, 138 S.E.2d 890, supra.

And yet, even assuming that the evidence authorized an inference that the appellant acted in a sudden "heat of passion," the evidence before the jury would only present two inconsistent theories, one of guilt and one of innocence. Appellant's theory is that the deceased provoked a fist fight, that they began to roll in the mud and that when the appellant tried to flee to the house the deceased drew a knife and was killed in self-defense. The state's theory is that the appellant committed the crime outside the house as the result of a "sudden, violent, and irresistible passion," dragged the body into the house and fabricated the story of self-defense. "Where the facts in evidence and all reasonable deductions therefrom present two theories, one of guilt and the other consistent with innocence, the justice and humanity of the law compel the acceptance of the theory which is consistent with innocence." *Davis v. State*, 13 Ga. App. 142(1), 78 S.E. 866. Thus even assuming the state had proved with sufficient evidence a theory of voluntary manslaughter, which it did not, we should be compelled to reverse because the entirety of that evidence and all reasonable deductions therefrom present two theories and that

which is consistent with innocence must be accepted.

The majority holds that this evidence warranted a verdict of guilty of manslaughter. If this is true then the majority has overruled *Wall v. State*, 5 Ga.App. 305, 63 S.E. 27, supra, and should so indicate. *Price v. State*, 108 Ga.App. 581, 585, 133 S.E.2d 916 holds that *Wall* does not apply where there is evidence of facts and circumstances which are contradictory to the statement made by the defendant. In such a case the jury can believe certain parts of the defendant's statement and reject other parts, and combine the parts believed with the evidence of facts and circumstances which they believe in order to arrive at a logical verdict. The majority holds that the jury was authorized to disbelieve appellant's testimony because of his contradictory statements. I agree that the jury could disbelieve the appellant as to the deceased's wearing of the coat, the location of the spread to cover the body and his location when the fatal shot was fired. *Price* does not stand for the proposition that a jury can disbelieve a defendant's story and then convict him of manslaughter without some evidence to show that the shot was fired in "hot blood" and not under circumstances where there was an actual or apparent necessity to do so to save his own life. *Pennamon v. State*, 110 Ga.App. 475, 138 S.E.2d 890, supra. In this state I believe, though the majority does not, that there must be evidence to support a criminal conviction even though the defendant's story may be contradictory. Where is the evidence to show the death occurred in the truck and not the house? There is none. Where is the evidence that the deceased was shot in the yard? Canine's blood does not seem to me to be sufficient proof of this. Where is the evidence to show that the deceased was killed in any manner other than in self-defense? There is none. The contradictions in the appellant's story in no way disprove his explanation that the shot was fired in self-defense. To my mind the fact that a defendant's story may prove to be contradicted does not remove the state's burden to show at least *some* evidence of "hot blood." The fact that a defendant's explanation may be contradicted in some respects does not obviate the necessity for proof of the commission of a crime in order to sustain a conviction. Here the only evidence which could possibly be contrary to the appellant's statement was the coat, the sheet and the bullet's trajectory. If evidence that the deceased was wearing a coat, was covered by a sheet and was not shot in exactly the manner described is sufficient evidence to show "hot blood" when the defendant's statement is correct in other respects and there is no other contradicting testimony, then there is little need for a defendant convicted in a criminal case to appeal his conviction to this court on the general grounds.

It is a woeful day when the state seeks a conviction of murder on such scant evidence. It is an even sadder day when a jury returns a verdict of guilty of manslaughter based upon so little evidence. But it is perhaps the most regretful day of all when an appellate court gives judicial sanction to such a result.

For reasons stated above, I must respectfully dissent from the majority's affirmance of this conviction.

I am authorized to state that Judges CLARK and STOLZ concur in this dissent.