No. 80–1637. MCELROY, WARDEN *v.* HOLLOWAY. C. A. 5th Cir. Certiorari denied.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

Perhaps the tersest summary of the reasons I would grant certiorari in this case is contained in the "black letter" heading of Part II, section B, subsection 4 of the opinion of the Court of Appeals: *"Where the states are left after Winship, Mullaney, and Patterson."* 632 F. 2d 605, 624. The opinion of that court, which comprises 79 printed pages of the appendix to the petition for certiorari here, suggests that the answer is not crystal clear, even to the Court of Appeals for the Fifth Circuit whose judgment we are asked to review.

*Mullaney* v. *Wilbur,* 421 U. S. 684 (1975), established that a State must prove every element of a criminal offense beyond a reasonable doubt. It is equally well established, however, that state legislatures and state courts, not federal judges, define the elements of a state criminal offense. *Id.,* at 691. The Court of Appeals for the Fifth Circuit in this case followed the former rule but not the latter and, on the strength of this possible error, ordered released from prison a person convicted of voluntary manslaughter whose conviction had been affirmed on direct appeal and state habeas corpus. Because I believe that it is for Georgia, and not the Court of

Appeals for the Fifth Circuit, to define the elements of the crime of voluntary manslaughter under Georgia law, I would grant plenary consideration.

Respondent Holloway was tried before a Georgia jury for murder and convicted of the lesser included offense of voluntary manslaughter. Under Georgia law "[a] person commits murder when he unlawfully and with malice aforethought, either express or implied, causes the death of another human being." Ga. Code § 26–1101 (a) (1978). Voluntary manslaughter is defined as causing the death of another human being under circumstances which would otherwise be murder if the killer "acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." § 26–1102. Respondent admitted that he intentionally killed the victim but claimed that he acted in self-defense. Georgia law recognizes the defense of self-defense, § 26–902, and explicitly provides that a claim of self-defense "is an affirmative defense." § 26–907. The trial judge accordingly instructed the jury, without objection from respondent's counsel, that after the State had proved an intentional homicide *"the burden is on the slayer"* to show that the killing was justified, in this case by self-defense. 632 F. 2d, at 619 (emphasis in original).

Respondent appealed his conviction, but did not raise any *Mullaney* issue. The Georgia Court of Appeals affirmed, 137 Ga. App. 124, 222 S. E. 2d 898 (1975), and the Georgia Supreme Court denied certiorari. Respondent then sought federal habeas relief, but the District Court dismissed his application without prejudice for failure to exhaust, suggesting *sua sponte* that the trial court's instruction was " 'notably suspect under the principles of *Mullaney* v. *Wilbur.*' " 632 F. 2d, at 614. The state trial court denied state habeas relief, and the Georgia Supreme Court affirmed. Rejecting respondent's *Mullaney* claim, the Georgia Supreme Court ruled: "The burden placed on the defendant to excuse the homicide

is an affirmative defense. Code Ann. § 26–907. The defendant is not required to negate any of the elements of the crime which the state must prove to convict." 241 Ga. 400, 401, 245 S. E. 2d 658, 659 (1978).

Respondent thereupon again sought federal habeas relief, which this time was granted on the ground that the instruction impermissibly shifted the burden of proof from the State. The Court of Appeals for the Fifth Circuit affirmed. After stating that "the statute's characterization of self-defense as an 'affirmative defense' tells us nothing about the burden of persuasion on the self-defense issue," 632 F. 2d, at 630, the court concluded that since an element of the crime for which respondent was convicted was that the killing be "unlawful," and self-defense negates that element, requiring the defendant to prove that he acted in self-defense relieves the State of its burden of proving the unlawfulness of the killing. The court noted that "[t]he State has not cited, and our research has not found, any case from the Georgia courts which holds that the absence of self-defense has . . . been read out of the requirement of unlawfulness." *Id.*, at 634.

A common-sense reading of a statutory characterization of a defense as an "affirmative defense," however, certainly suggests that its absence is not an "element of the crime" which the State must prove. But more significantly, that is the exact reading given to this statutory characterization of self-defense as an affirmative defense by the Supreme Court of Georgia in the opinion which denied this very respondent state habeas relief. In the words of that court, the putting of the burden of proof on the defendant to prove self-defense is not requiring him to "negate any of the elements of the crime which the state must prove to convict." 241 Ga., at 401, 245 S. E. 2d, at 659.

In *Patterson* v. *New York,* 432 U. S. 197, 210 (1977), this Court declined "to adopt as a constitutional imperative, operative countrywide, that a State must disprove beyond a

reasonable doubt every fact constituting any and all affirmative defenses related to the culpability of an accused." By interpreting the term "unlawful" in the Georgia statutes as broadly as it has, the Court of Appeals in this case achieved just this result. It is doubtful that any state legislature would intend such a result; the Georgia Supreme Court in this case has told us that the Georgia Legislature did not. As stated in *Mullaney* itself, "state courts are the ultimate expositors of state law . . . and . . . we are bound by their constructions." 421 U. S., at 691. In *Patterson* we recognized that the rule that the definition of the elements of a crime is a state-law matter would permit state legislatures to allocate burdens of proof "by labeling as affirmative defenses" that which could otherwise be considered elements of a crime. 432 U. S., at 210. In that opinion, the Court noted that in *Rivera* v. *Delaware,* 429 U. S. 877 (1976), decided *after Mullaney,* we had dismissed for want of a substantial federal question the claim that the latter case had overruled *Leland* v. *Oregon,* 343 U. S. 790 (1952), which held that a State might make insanity an "affirmative defense." That is precisely what Georgia has done in this case with respect to "self-defense." Because the Court of Appeals for the Fifth Circuit deprived Georgia of an option specifically recognized in *Patterson,* by substituting its own reading of the term "unlawful" in the Georgia Code for the reading given that term by the Georgia Supreme Court, I dissent from the denial of certiorari.